UNITED STATES of America, Plaintiff–Appellee,

v.

Dominic SIMONE, Robert "Bosko" Struminikovski, Nicholas Simone, John Peter Suchan, Vasil Struminikovski, Panagiotis "Pete" Pistas, Deborah Cerveny and Lubin Milevski, Defendants–Appellants.

Nos. 88–3412, 88–3479, 88–3480, 88–3513 to 88–3515, 88–3522 and 89–1094.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1990.

Decided May 3, 1991.

Rehearing and Rehearing En Banc Denied June 5, 1991.

**1188**

Thomas M. Durkin, Joshua T. Buchman, Asst. U.S. Attys., Chicago, Ill., for plaintiff-appellee.

Allan A. Ackerman, Steven B. Muslin, Chicago, Ill., for Robert and Vasil Struminikovski.

Gary J. Ravitz, Chicago, Ill., for Nicholas Simone.

John T. Theis, Chicago, Ill., for John P. Suchan.

Richard C. Leng, Leng, Stowell & Friedman, Chicago, Ill., for Peter Pista.

Victor M. Pilolla, Oak Park, Ill., for Deborah Cerveny.

Allan A. Ackerman, Chicago, Ill., for Dominic Simone.

Nan R. Nolan, Robinson, Curley & Clayton, Chicago, Ill., for Lubin Milevski.

Before CUMMINGS and MANION, Circuit Judges and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

Before the court are the consolidated appeals of eight defendants convicted of numerous conspiracy and drug trafficking offenses pursuant to 21 U.S.C. §§ 848, 846, 841(a)(1), 845b(f), and 844, and 18 U.S.C. §§ 201(b)(1), 924(c), and 922(g)(1). All the defendants challenge the conspiracy count of the indictment and two jury instructions. Defendants Bosko and Vasil Struminikovski also allege ineffective assistance of counsel and prejudicial error in the jury instructions during the forfeiture phase of the trial. In addition, defendant Deborah Cerveny challenges the sufficiency of the evidence concerning her participation in the conspiracy. For the following reasons, we affirm the convictions.

## BACKGROUND

Under the eighteen-count superseding indictment[1], defendant Robert "Bosko" Struminikovski [Bosko] was individually charged with engaging in a continuing criminal enterprise; conspiracy; providing cocaine to a pregnant individual; offering a bribe to a public official; possession of morphine; possession of firearms by a convicted felon; and possession of firearms during and in relation to his commission of drug trafficking offenses. All the defendants were charged with conspiracy to distribute and to possess with intent to distribute cocaine and heroin, and various defendants were charged in separate counts of actual distribution and possession. The indictment additionally included the charge that certain assets belonging to Bosko, his father Vasil Struminikovski [Vasil], and Amanda Roland [Roland] were subject to forfeiture to the United States pursuant to 21 U.S.C. § 853(a).

On August 1, 1988, the jury trial commenced before United States District Judge Ilana D. Rovner. Following an eight-week trial, the jury returned guilty verdicts on all charges against all defendants.[2] It also returned forfeiture verdicts against Vasil and Bosko Struminikovski.

## FACTS

Even though Bosko's appellate counsel took editorial liberties by glamorizing his client as a "Yugoslavian farm boy ... living the American dream," he accurately described Bosko as a salesman (of drugs) who worked hard to sell his wares (cocaine, primarily) at all hours of the day and night,

---

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

1. The original grand jury indictment was returned against Robert "Bosko" Struminikovski, John Peter Suchan, and Amanda Roland on September 24, 1987. A superseding indictment was brought on January 14, 1988, adding ten defendants and numerous charges. On April 28, 1988, the grand jury returned a second superseding indictment, the one actually tried in the district court, charging twelve defendants in eighteen offenses with various federal drug-related offenses from approximately 1985 through August 29, 1987. Four of those charged, Carmella Viola, Brenda Parson, Amanda Roland, and Vito Cancialosi, entered guilty pleas prior to trial and testified at trial on behalf of the

government. Defendant Deborah Cerveny pled guilty to two substantive counts of the indictment but chose to stand trial on the conspiracy count.

2. The following sentences were accorded to each defendant: Bosko, 23 years imprisonment, $140,000 in fines, and 38 years of supervised release; Nicholas Simone, 4 years imprisonment; Dominic Simone, 4 years imprisonment; John Peter Suchan, 6½ years imprisonment and 7 years supervised release; Vasil Struminikovski, 5 years imprisonment plus a $10,000 fine; Panagiotis Pistas, 30 months imprisonment; Deborah Cerveny, 4 years imprisonment and 3 years supervised release; and Lubin Milevski, 8 years imprisonment. The sentences have not been challenged on appeal.

"out of his car, out of his pockets, out of his home, out of some dozen restaurants and fast food joints." [3] But the facts are not glamorous; with the other defendants Bosko established a narcotics sales network of the type that this court has seen too often.

The indictment charged that there was a drug distribution conspiracy, under Bosko's direction, in and around Cicero, Illinois, from 1985 through August 29, 1987. However, the evidence introduced at trial established that the conspiracy began in the summer of 1984, when Bosko and Roland, his girlfriend, met two of Bosko's acquaintances in Florida. Three weeks later Roland flew to Florida and then drove back to Chicago; in the car was a kilogram of cocaine.

During the fall of 1984, Bosko began selling cocaine in the United Grill, a restaurant in Cicero. He sat at a back table and took drugs from the ceiling tiles when he made a sale. Defendant Lubin Milevski [Milevski] obtained cocaine from Bosko and sold it at the same restaurant in 1985. Soon Carmella Viola [Viola], Vito Cancialosi [Cancialosi], and defendants Panagiotis Pistas [Pistas] and Deborah Cerveny [Cerveny] were assisting Bosko and Milevski with the drug sales, usually selling 1/4–gram packets of cocaine and splitting the proceeds with Milevski or Bosko. Milevski and others sold cocaine during the day, and Bosko sold it in the evening.

On the evening of October 3, 1985, Cerveny sold 3.7 grams of cocaine to undercover policeman Jeffrey Caudill [Caudill]. She told him that the cocaine would be delivered by someone driving a white Buick Riviera, and that she could get more for Caudill in the future. Shortly afterward Bosko drove up in a white Riviera and went into the United Grill. Five minutes later Cerveny emerged from the restaurant, delivered the cocaine to Caudill in exchange for $275, and re-entered the United Grill with the money.

In February 1986, Milevski opened La Petite Snack Shop in Cicero, near the United Grill, and the drug operation moved

there. Again Milevski supervised the daytime cocaine sales and Bosko took charge at night. Viola, Pistas, Cancialosi, Brenda Parson [Parson], and defendants Nicholas Simone [Nick], Dominic Simone [Dominic], and John Suchan [Suchan] assisted Bosko and Milevski with the distribution of cocaine at La Petite from January 1986 to June 1986, when the restaurant closed. For security the conspirators installed surveillance cameras, monitor screens in the back room, a steel door with a peephole at the entrance to the back room, and a window in the wall through which the drugs were passed. Milevski hired Parson to work behind the counter and Pistas to cook. In fact, they watched for police and sold drugs; records showed that very little food was sold at La Petite.

But drug sales went well. Drugs were distributed from the back room of La Petite. Bosko packaged the cocaine and handed it through the window to Dominic, Nick or another of the co-conspirators for delivery. When Bosko was not present at La Petite, he left another co-conspirator in charge. At those times, Bosko would sell his drugs elsewhere. Throughout this period and after La Petite closed, Bosko and Vasil distributed cocaine from Vasil's two houses in Cicero. Bosko also kept and sold cocaine in his home in Brookfield between April 1986 and April 1987.

When La Petite closed, Milevski continued to obtain cocaine from Bosko and to sell it through Viola and Parson from outside the United Grill. Bosko moved his drug sales to other nearby restaurants; Cerveny was often present with Bosko and the others. Nick and Dominic frequently returned phone calls received on Bosko's pager, took cocaine orders from customers, accepted merchandise in exchange for cocaine, and occasionally delivered cocaine to customers. Suchan also helped Bosko distribute cocaine during this period by cutting, packaging and occasionally delivering cocaine to Bosko's customers. In the summer of 1986, Bosko began selling drugs from Suchan's house as well.

---

**3.** Consolidated Supplemental Brief for Bosko and Vasil Struminikovski at 7.

In March and April of 1986, DEA Agent Tom Kelly [Kelly], posing as an attorney eager to buy drugs, purchased cocaine on two occasions from Bosko. In March 1987, Kelly purchased 55 grams of Bosko's cocaine from Suchan. In July and August of 1987, Bosko and Suchan began negotiating with the agent for the sale of approximately 2.3 kilograms of Bosko's cocaine. Kelly's meeting with Suchan was videotaped by the DEA. On August 28, 1987, the deal was completed, and Roland, who was 8 1/2 months pregnant at the time, delivered the cocaine to Kelly. After Kelly paid her, Roland was taken into custody. Suchan and Bosko were arrested later that night. As he was placed under arrest, Bosko attempted to bribe the arresting officers. Agents recovered a significant amount of cash and cocaine from Bosko's shirt pocket and truck, and more cocaine, heroine and morphine, as well as guns and cash from his house.

Much more detailed evidence, both direct and circumstantial, was presented by the government to show each defendant's relationship to Bosko and to each other, and each one's participation in the conspiracy. The government also offered evidence that Dominic and Cerveny warned Viola and Parson not to talk to the government before trial. But Viola, Parson, Roland and Cancialosi entered guilty pleas and agreed to testify at trial on behalf of the government.

## ANALYSIS

I. Single or multiple conspiracy charge in indictment

Defendants contend that the district court should have dismissed Count 2 of the indictment, the conspiracy count, because it charged multiple conspiracies in a single count, in violation of Fed.R.Crim.P. 8.[4]

Count 2 charged that, from 1985 through August 29, 1987, twelve named defendants conspired to distribute and to possess with intent to distribute cocaine and heroine in violation of 21 U.S.C. § 841(a)(1). It presented the different locations of the conspiracy's drug transactions, specific drug sales to undercover agents from those locations, and various telephone calls that facilitated the cocaine sales by Bosko and Roland to Agent Kelly. In addition, Count 2 identified the drugs and firearms found on Bosko and in his car and house, and charged that he attempted to bribe the arresting officers. All the acts described in Count 2 were alleged to further a single drug conspiracy.

On appeal defendants claim that Count 2 encompassed two or three separate conspiracies. They contend that, during 1985 and 1986, core participants Bosko and Milevski began the conspiracy and supplied relatively small amounts of cocaine to others to sell, or sold it themselves, in two area restaurants and from Bosko's and Vasil's houses. The defendants then contend that in 1987 the second conspiracy began: that Bosko started working with Suchan and Roland, that former conspirators dropped out, and that larger quantities of cocaine were sold. A third arrangement, suggest the defendants, was "an itinerant selling scheme" between Bosko and the Simone brothers to distribute cocaine at various restaurants during 1987. Defendants allege that the charging of several conspiracies in one count was an error that warrants reversal.

We begin by considering the propriety of appellate review. In this case, the challenge to the indictment was not

---

4. Although defendants' claim of improper joinder of separate offenses recites the language of Fed.R.Crim.P. 8(a), defendants cannot rely on 8(a), for that rule may be applied only to offenses joined against a single defendant. 8 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 8.06[1] (2d Ed.1990). "When two or more defendants are involved in a joint indictment, our analysis of the joinder question pro-

ceeds under Fed.R.Crim.P. 8(b)." *United States v. Diaz,* 876 F.2d 1344, 1355 (7th Cir.1989). Rule 8(b) provides that "two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses."

raised prior to trial as required by Rule 12(b)(2) of the Federal Rules of Criminal Procedure.[5] The failure to object to alleged defects in the indictment before trial constitutes a waiver. Fed.R.Crim.P. 12(f); *United States v. Podell*, 869 F.2d 328, 331 (7th Cir.1989). An appellate court addresses a waived claim only if cause is shown that might justify the granting of relief from the waiver. Fed.R.Crim.P. 12(f); *United States v. Petitjean*, 883 F.2d 1341, 1344 (7th Cir.1989); *United States v. Whaley*, 830 F.2d 1469, 1475 (7th Cir.1987), *cert. denied*, 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988). If there is sufficient cause, the court evaluates the claim under the difficult standard of the plain error doctrine. Fed.R.Crim.P. 52(b); *United States v. Balzano*, 916 F.2d 1273, 1280 (7th Cir.1990). "A 'plain error' is one that results in 'an actual miscarriage of justice,' which implies that the defendant 'probably would have been acquitted but for the erroneously admitted evidence.'" *United States v. Mejia*, 909 F.2d 242, 247 (7th Cir.1990). *See Balzano*, 916 F.2d at 1280.

■■■ Defendants have not given the court any cause to justify relief from the waiver. Consequently we hold that defendants' challenge to the indictment is waived.[6]

---

**5.** The court's denial of pretrial motions to dismiss Count 2 for vagueness, raised by defendants Nicholas Simone, Dominic Simone, Vasil Struminikovski and Lubin Milevski, has not been appealed. No defendant moved to dismiss Count 2 before trial on the ground that it improperly joined multiple offenses in a single count.

**6.** Even if we were to address the waived claim, however, we would find defendants' argument completely without merit. They assert that the conspiracy count, by alleging separate conspiracies, failed to inform the defendants of the specific charge against them, to their prejudice. Our review of the indictment reveals, however, that it stated the elements of a conspiracy offense, informed the defendants of the nature of the charge so that they could prepare a defense, and enabled them to plead the judgment as a bar to any later prosecution for the same offense. *See United States v. Moya–Gomez*, 860 F.2d 706, 751 (7th Cir.1988), *cert. denied sub nom. Estevez v. United States*, 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989), citing *Ham-*

## II. Instruction on "mere presence" and "mere association"

■■■ The defendants assert that the district court erred by including the last sentence in this instruction concerning a defendant's mere presence and mere association with conspirators:

Mere presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to establish a defendant's guilt. Mere association with conspirators or those involved in a criminal enterprise is insufficient to prove a defendant's participation or membership in a conspiracy. However, presence or a single act is sufficient if the circumstances permit the inference that the presence or the act was intended to advance the ends of the conspiracy.

The first statement of the instruction follows the language of Instruction 3.04 of the Federal Criminal Jury Instructions for the Seventh Circuit. The second sentence, tendered by the defense, is being considered as a potential supplement to the pattern instruction. *See* Committee Comment to Pattern Instruction 3.04. However, the defendants challenge the third sentence on two bases: that it is not included in the pattern instruction, and that it diluted the key principle that a defendant must knowingly and intentionally join the conspiracy and agree to associate himself with its criminal objectives.[7]

---

*ling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). Count 2 described a single ongoing drug distribution conspiracy under Bosko's direction, involving core members who bought from and sold to various suppliers and dealers who changed over time. This circuit has treated such schemes as single conspiracies rather than a series of smaller separate conspiracies. *United States v. Paiz*, 905 F.2d 1014, 1020 (7th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991); *United States v. Sophie*, 900 F.2d 1064, 1081 (7th Cir.), *cert. denied sub nom. Duque v. United States*, — U.S. —, 111 S.Ct. 124, 112 L.Ed.2d 92 (1990). The face of the indictment properly alleged a single scheme carried out by a series of acts, *see* Fed.R.Crim.P. 8(b); *Diaz*, 876 F.2d at 1356, and clearly informed the defendants of the nature of the charges against them.

**7.** At oral argument defendant Pistas individually asserted that the instruction allowed the jury to find him guilty by his mere presence when he was just "hanging around" the conspirators.

On appeal, jury instructions are to be reviewed in their entirety and taken as a whole. *United States v. McNeese*, 901 F.2d 585, 607 (7th Cir.1990). As long as they "treat the issues fairly and adequately, they will not be interfered with on appeal." *United States v. Fournier*, 861 F.2d 148, 150 (7th Cir.1988).

This mere association/mere presence instruction has been approved by our circuit in *United States v. Caliendo*, 910 F.2d 429, 438 (7th Cir.1990), quoting *United States v. Herrero*, 893 F.2d 1512, 1532 (7th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 2623, 110 L.Ed.2d 644 (1990), quoting in turn *United States v. Xheka*, 704 F.2d 974, 988–89 (7th Cir.), *cert. denied*, 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983). We have found the final sentence of the instruction to be an accurate statement of the law. *United States v. Binkley*, 903 F.2d 1130, 1134 (7th Cir.1990). In addition, this instruction is complemented by the other instructions on conspiracy which required the government to prove beyond a reasonable doubt each defendant's intent to join the conspiracy, his awareness of its common purpose and his willing participation. Therefore, the instructions given by the court, taken as a whole, make it abundantly clear that a defendant may not be convicted without knowingly becoming a member of the conspiracy.

### III. Instruction on buyer/seller principle

Defendants object to the instruction given to the jury concerning the impact of a mere buyer/seller relationship on a defendant's membership in the conspiracy. The instruction given was as follows:

Mere proof of a buyer/seller relationship between an individual and a member of a drug conspiracy is insufficient to convict a defendant on a charge of conspiracy. In other words, if you believe

that an individual defendant was merely a willing purchaser of drugs *for his or her own personal consumption* and nothing more, that is insufficient evidence to prove his or her membership in the conspiracy. It is the defendants John Suchan and Deborah Cerveny's theory of defense that they were merely purchasers of drugs.

*On the other hand, if a person purchased drugs from a conspirator for the purpose of reselling the drugs, he or she is a member of the conspiracy if he or she knows the general aims of the conspiracy.*

The defendants submitted the first paragraph, and the government modified the instruction by adding the italicized portions. The court gave the combined instruction. Defendants focus on the second paragraph, which they claim is contrary to law and misleading because it improperly suggests that membership in a conspiracy could be established without proof of intent to join the conspiracy.

We recently approved an instruction quite similar to this one in *United States v. Briscoe*, 896 F.2d 1476, 1514 (7th Cir.), *cert. denied sub nom. Usman v. United States*, —— U.S. ——, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990). As in *Briscoe*, the defendants' instruction herein was included, almost *verbatim*, within the instruction ultimately submitted to the jury. Furthermore, the added portions of the instruction incorporated language taken directly from prior decisions of this court on the buyer/seller issue. The instruction ultimately given to the jury in this case distinguishes clearly between a drug purchase for personal consumption and one for resale, and limits the "mere" buyer/seller relationship to the former situation. Because the instruction accurately and completely stated the buyer/seller principle in conspiracy law, we hold that it was properly given.

The court notes that, despite numerous extensions of time, Pistas failed to file a supplemental brief; however, by permission of the court Pistas' counsel was heard at oral argument. *See* Fed.R.App.P. 31(c). We find Pistas' allegations to be without merit. There was certainly sufficient evidence at trial for a jury reasonably to

conclude that Pistas was selling cocaine and facilitating the sale and delivery of drugs by others. *See, e.g., United States v. Camargo*, 908 F.2d 179, 184 (7th Cir.1990). It was the evidence, not the instruction, that led the jury to convict Pistas of conspiracy.

## IV. Ineffective assistance of counsel

■ Appellate counsel for defendant Bosko Struminikovski asserts that Bosko was deprived of effective assistance of counsel when his trial attorney, Steven B. Muslin, "pleaded his client guilty" to many of the counts charged against him.

Before trial Bosko had entered a "not guilty" plea to all charges. Nothing in the record indicated that Bosko agreed to change his plea. Yet, after the eight-week trial, in his summation, Bosko's trial counsel repeatedly stated that his client sold dope. At one point Mr. Muslin placed before the jury an exhibit of cocaine and stated, "The truth of the matter is, my client sold cocaine. And on March the 12th, 1986, he did sell this cocaine to [undercover agent] Tom Kelly." Tr. at 5173. In fact, the trial transcript reported some twenty statements made by his trial counsel conceding that Bosko packaged and sold cocaine and kept in his possession firearms, beepers, packaging materials and several types of narcotics.

According to Bosko, in the record there is neither objection nor consent to his attorney's stipulation of Bosko's guilt to certain counts. Bosko argues that a silent record will not support a waiver of a guilty plea. *Boykin v. Alabama*, 395 U.S. 238, 242–43, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). He further asserts that Mr. Muslin's conduct must be adjudged constitutionally ineffective because he admitted Bosko's guilt with respect to many acts, and closed his summation by urging the jury: "Please find my client guilty of those things that he should be found guilty of. Find him not guilty of those things that he should not be found guilty of." Tr. at 5217. He urges this court to adopt the Sixth Circuit position that "an attorney may not admit his client's guilt which is contrary to his client's earlier entered plea of 'not guilty' unless the defendant unequivocally understands the consequences of the admission." *Wiley v. Sowders*, 647 F.2d 642, 649 (6th Cir.), *cert. denied*, 454 U.S. 1091, 102 S.Ct. 656, 70 L.Ed.2d 630 (1981) (citation omitted). Bosko points out that this circuit, in dictum, offered a similar proposition: "Ac-

cused's counsel had no authority to change his plea nor to stipulate facts without his consent." *Achtien v. Dowd*, 117 F.2d 989, 994 (7th Cir.1941).

The government responds that, from his opening argument, Bosko's trial counsel followed a deliberate trial strategy of admitting Bosko was a drug dealer. The evidence against Bosko was overwhelming; therefore, according to the prosecutor, Mr. Muslin's tactic was to portray Bosko as a "penny-ante dope peddler" on his own, not a leader of a conspiracy or of a continuing criminal enterprise. The government explained Muslin's strategic plan: By admitting what could not be denied, Bosko's attorney hoped to buttress his credibility with the jury. Therefore during closing argument Muslin conceded those counts without mandatory minimum sentences and contested the counts with the enhanced, consecutive or mandatory minimum penalties. In this way, if the approach had worked, Bosko would have been found guilty only on those counts for which he could argue the most lenient sentence.

■ Bosko's claim of ineffective assistance of counsel was not raised below or on collateral attack. However, because the record is sufficiently developed for a review of the issue (*see United States v. Madewell*, 917 F.2d 301, 303 n. 1 (7th Cir. 1990); *United States v. Ray*, 828 F.2d 399, 420 (7th Cir.1987), *cert. denied*, 485 U.S. 964, 108 S.Ct. 1233, 99 L.Ed.2d 432 (1988)), we will consider whether the defendant carried his burden of proving constitutionally ineffective legal assistance under the two components of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant is first required to show that his counsel's conduct was deficient by identifying "acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066. The defendant must further establish that his counsel's professionally unreasonable conduct prejudiced his defense by demonstrating a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been differ-

ent." *Id.* at 694, 104 S.Ct. at 2068. The *Strickland* court points out the strong presumption that counsel rendered adequate assistance and acted in accord with sound trial strategy, *id.* at 689, 104 S.Ct. at 2065, a presumption the defendant must overcome. *See Balzano,* 916 F.2d at 1292.

Defendant Bosko's charges of constitutionally deficient conduct focus entirely on his counsel's summation after the eight-week trial. During his closing argument Mr. Muslin made these statements:

> I told you from the beginning that my client sold dope and that he sold it by himself.
>
> ... [T]hat is the subject of Count Seven.[8] And you can find him guilty of that because it happened, and Tom Kelly [undercover agent] said so and I believe Tom Kelly.
>
> This cocaine is the subject of Count Eight.[9] I am not quarrelling with it. And Bosko himself sold it to Tom Kelly at the McDonald's.... If you want to find him guilty on Count Eight, please be my guest. That is something he is guilty of. Like I said when I started, only find him guilty of what he is guilty of.
>
> ... So these are Bosko's beepers. Bosko sold dope. They didn't find beepers on any of these other people. Do you see beepers on anybody else? No, they came from Bosko.... It proves that he sold dope.
>
> I know this. My client sold cocaine out of his pockets every single night just about at five restaurants, stayed up all night long, driving around, then came home, slept, got up, packaged the cocaine, counted the money and went out again.

*See* Tr. at 5162–5217. Mr. Muslin also admitted that Bosko owned packaging tools,

guns, cocaine, heroine and morphine. He frequently reiterated that Bosko packaged and sold cocaine himself, and held up the drugs that had been found, at the time of arrest, in Bosko's pockets, truck and house.

These concessions by Bosko's counsel were bold and blatant. However, our examination of the trial transcript reveals that the admitted facts arose from indisputable evidence and credible testimony. And the concessions made by Mr. Muslin about the defendant's activities concerned the drug trafficking that Bosko did only on his own or with Amanda Roland, his girlfriend, who entered a guilty plea. The attorney vigorously contested the most serious charges, such as conspiracy and continuing enterprise. We find this approach to be a logical trial strategy.

Two tactics were obvious upon review of the trial transcript. First, defense counsel's appeal that the jury "find my client guilty of things that he did, and not ... find him guilty of things that he didn't do and that the government hasn't proven" (Tr. at 5167) was a deliberate strategy woven throughout the trial. His opening address to the jury suggested that the evidence would show no continuing criminal enterprise, but rather some information about Bosko that the police embellished until they turned "a molehill into a mountain." Counsel then urged the jury:

> And you people have to stop that molehill from becoming a mountain.... If someone did something wrong they should be found guilty of what they did, not of what the government would like you to think they did.

Tr. at 79.[10] His closing contained the same argument.

Second, after such overwhelming evidence of drug trafficking was introduced at

---

**8.** Count Seven of the indictment charges that Bosko distributed of 45.42 grams of cocaine on March 12, 1986.

**9.** Count Eight of the indictment charges that Bosko distributed 56.4 grams of cocaine on April 29, 1986.

**10.** Indeed, throughout the trial counsel insisted that Bosko was not guilty of Counts 1 (continuing criminal enterprise); 2 (conspiracy); 3 (de-

livery, with Cerveny, of 3.7 grams of cocaine to an undercover agent); 5 (delivery, with Cancialosi, of 2.7 grams of cocaine); 6 (delivery of 3.2 grams of cocaine); 10 (providing cocaine to a pregnant individual, an offense with an enhanced penalty); 13 (bribery of a public official); and 17 (possession of firearms in connection with a drug trafficking crime, with a mandatory minimum five-year consecutive sentence). *See* Tr. at 78–82, 5181–5214.

trial, defense counsel intended to portray Bosko as a "dope dealer" selling on his own, without assistance from others. Perhaps this tactic included an altruistic purpose of protecting Bosko's co-defendants (particularly his father) from a conspiracy charge; but more likely Mr. Muslin hoped to avoid a guilty verdict for Bosko on the charge with the most severe penalty, continuing criminal enterprise, which carried a ten-year mandatory minimum sentence.

 We next consider Bosko's assertion that nothing in the record indicates Bosko's consent to a plan conceding his guilt on some counts. The *Strickland* Court suggested that, in assessing counsel's litigation decisions, "an inquiry into counsel's conversations with the defendant might be critical." *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066. In this case, even though we know nothing of the discussions between Bosko and his attorney, we have in the record a 22–page handwritten letter sent post-trial by Bosko to the trial judge. Bosko's appellate counsel referred the court to one page of the letter,[11] in which Bosko stated that his lawyer discouraged him from testifying or considering a guilty plea.[12] In the rest of the letter, however, Bosko reported his interpretation of the circumstances, events and people at issue in the trial. The letter reported that Bosko's father was hard-working and honest, that the co-defendants never worked for Bosko, and that Bosko and his girlfriend Roland sold drugs without the help of any-

one else. These rambling explanations made clear the fact that attorney Muslin's trial tactics followed Bosko's approach by denying the conspiracy while conceding Bosko's own undeniable drug transactions.[13] In light of Bosko's letter, therefore, we find it reasonable to believe that trial counsel's actions were "based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Id.* Instead of "pleading his client guilty," as Bosko herein maintains, this defendant's trial lawyer was following his client's wishes.

A defendant is "deprived of effective assistance of counsel when his own lawyer admit[s] his client's guilt without first obtaining his client's consent to this strategy." *Wiley v. Sowders*, 647 F.2d at 650.

> [C]ounsel's *complete concession* of the defendant's guilt nullifies his right to have the issue of his guilt or innocence presented to the jury as an adversarial issue and therefore constitutes ineffective assistance.

*Francis v. Spraggins*, 720 F.2d 1190, 1194 (11th Cir.1983), *cert. denied sub nom. Kemp v. Spraggins*, 470 U.S. 1059, 105 S.Ct. 1776, 84 L.Ed.2d 835 (1985) (emphasis added), citing *Wiley*. But when the admissions concern only some of the charges to be proven,[14] or when they do not actually concede guilt,[15] counsel's concessions have been treated as tactical retreats and deemed to be effective assistance.

---

11. See Bosko's Supplemental Brief at 22 n. 29. Bosko's letter is found in the record at docket number 601.

12. The defendant has not claimed herein that his attorney prevented him from pleading guilty or from giving information to the government or to the court.

13. Indeed, the letter reveals that Bosko would have conceded far more than his attorney thought prudent, in light of his plea of not guilty. He wanted to explain his activities to the government: "If they would have tried to approach me from the beginning, I was here for them. I don't have anything to hide (Like I told them when I was arrested) that, in a way I was glad to be arrested because my behavior was like a disease; for some reason, I could not stop."

14. See, e.g., Jones v. Butler, 864 F.2d 348, 365–66 (5th Cir.1988), cert. denied, 490 U.S. 1075, 109 S.Ct. 2090, 104 L.Ed.2d 653 (1989) (counsel's concession of the death and rape of the victim but not of the identity issue was an appropriate strategic decision); United States v. Leifried, 732 F.2d 388, 390 (4th Cir.1984) (selective admissions of guilt to avoid charge of continuing criminal enterprise was acceptable trial strategy).

15. See, e.g., Messer v. Kemp, 760 F.2d 1080, 1088–92 (11th Cir.1985), cert. denied, 474 U.S. 1088, 106 S.Ct. 864, 88 L.Ed.2d 902 (1986) (weakly implied guilt, unavoidable in light of overwhelming evidence, was trial strategy).

In its discussion concerning the right to effective assistance of counsel as a right to "meaningful adversarial testing," the Supreme Court presents a fine-line distinction concerning the duty of defense counsel representing an accused who offers little or no defense:

> Of course, the Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade. *See Nickols v. Gagnon,* 454 F.2d 467, 472 (CA7 1971), *cert. denied,* 408 U.S. 925, 92 S.Ct. 2504, 33 L.Ed.2d 336 (1972). At the same time, even when no theory of defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond reasonable doubt....

*United States v. Cronic,* 466 U.S. 648, 656 n. 19, 104 S.Ct. 2039, 2045 n. 19, 80 L.Ed.2d 657 (1984). Applying that guidance to this case, we recognize that it would have been foolhardy for Bosko's counsel to deny the drug sales so credibly proven by the government. But, rather than concede guilt completely, Mr. Muslin competently challenged the prosecution's proof of the other charges.

 We do not approve of a defense counsel's deliberate, explicit admission that a jury should find his client guilty of a charge in the absence of any suggestion that the defendant concurred in the decision to proceed in such a manner. However, in the case before us, Bosko's attorney intentionally stipulated facts and conceded those charges for which there was unrefutable evidence and no mandatory sentences, but forcefully argued Bosko's innocence on the charges with heavier penalties, as part of a trial strategy. It was a reasonable plan that was evident from the beginning of the trial. At no time did the defendant object to it; in fact, we believe he chose or at least condoned the tactics.

Our position was reinforced by Bosko's post-trial letter to the sentencing judge which provided ample evidence of his approval of the strategy.

As part of its highly deferential scrutiny, an appellate court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. It was incumbent on the defendant to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.,* citing *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955). Bosko did not do so. We hold that the defendant Bosko failed to show that the conduct of his trial counsel, in following this reasonably sound strategy, fell below an objective standard of reasonableness.[16] Consequently, we will not overturn Bosko's conviction on the basis of his sixth amendment challenge.

## V. Forfeiture

 Defendants Bosko and Vasil Struminikovski argue that the district court erred during the forfeiture phase of the trial by presenting in its instruction to the jury two burdens of proof with respect to the forfeiture allegations in the indictment, both "preponderance of the evidence" and "beyond a reasonable doubt." They contend that the jury should have been instructed to find that property was forfeitable only if the government had proven it subject to confiscation beyond a reasonable doubt.

The court first reminded the jury that its previous determination of the guilt of Bosko and Vasil was final and conclusive, and that its duty now was to decide whether the defendants must forfeit certain property. The court then began the forfeiture instructions:

> You are instructed that as to each claim of forfeiture, the Government must

---

**16.** Since the performance prong of the *Strickland* standard of ineffective assistance was not met, we need not address the prejudice prong. However, we note that Bosko did not argue that the jury's decision would probably have been different absent his counsel's alleged errors in his closing argument.

establish *beyond a reasonable doubt* that:

1. The property constituted or was derived from the proceeds obtained, directly or indirectly, as a result of a violation of Title 21 United States Code Sections 841(a)(1), 845b(f), 846 or 848; or

2. The property was used or intended to be used in any manner or part to commit or to facilitate the commission of a violation of those statutes; or

3. With respect to Bosko Struminikovski, the property constituted an interest in, claim against, or contractual right affording a source of control over the continuing criminal enterprise charged in the indictment.

You are further instructed with respect to the forfeiture allegations, that if you find that any of the property set out therein is the property of defendants Bosko Struminikovski or Vasil Struminikovski and that the Government has established *by a preponderance of the evidence* that:

1. Such property was acquired by such person during the period of a violation of Title 21 United States Code Sections 841(a)(1), 845b(f), 846, or 848 or within a reasonable time after such period; and

2. There was no likely source for such property, other than a violation of Title 21 United States Code Sections 841(a)(1), 845b(f), 846, or 848, then a re-

buttable presumption arises that the property is subject to forfeiture.

Tr. at 5509–5511.

As a preliminary matter we note that no objection was raised to the forfeiture instruction by the defense at trial. Therefore we will evaluate this challenge only for "plain error." *See* Fed.R.Crim.P. 52(b); *United States v. Medley*, 913 F.2d 1248, 1260 (7th Cir.1990). We review the entire record to determine "whether or not the defective instruction had a probable impact on the jury's finding of guilt," and will reverse only if we find a miscarriage of justice. *Id.*

We find, first, that the court's forfeiture instruction follows very closely the statutory language of 21 U.S.C. § 853.[17] It adapts subsection (a) when describing the property subject to forfeiture in the first half of the instruction, and mimics subsection (d), the "rebuttable presumption" subsection, in the second half of the instruction given to the jury. The defendants have declined to challenge the statute itself, the constitutionality of which we upheld in *United States v. Herrero*, 893 F.2d 1512 (7th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 2623, 110 L.Ed.2d 644 (1990). The only difficulty in the instruction is the court's insertion of the "reasonable doubt" standard.

In *Herrero* this court drew a clear distinction between the burdens required (1) to prove the substantive crime of which the defendant was convicted and (2) to support

---

**17.** The criminal forfeiture provision, 21 U.S.C. § 853, states:

**(a) Property subject to criminal forfeiture**

Any person convicted of a violation of this subchapter ... shall forfeit to the United States ...

(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;

(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and

(3) in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 848 of this title, the person shall forfeit, in addition to any proper-

ty described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.

\* \* \* \* \* \*

**(d) Rebuttable presumption**

There is a rebuttable presumption at trial that any property of a person convicted of a felony under this subchapter ... is subject to forfeiture under this section if the United States establishes by a preponderance of the evidence that—

(1) such property was acquired by such person during the period of the violation of this subchapter ... or within a reasonable time after such period; and

(2) there was no likely source for such property other than the violation of this subchapter....

the government's seizure of the convicted person's forfeitable property.

> Forfeiture is not an element of the offense, but only punishment for an offense upon which a conviction has already been entered.

*Id.* at 1541, citing *United States v. Sandini*, 816 F.2d 869, 874–76 (3rd Cir.1987) ("argument that forfeiture is an element which must be proved beyond a reasonable doubt confuses culpability with consequences"). The jury finds the defendant guilty at trial when the elements of the felony are established beyond a reasonable doubt. Once the defendant has been convicted under that strict standard, however, he is subject to criminal forfeiture proceedings pursuant to 21 U.S.C. § 853, which requires the government to make its proof by only a preponderance of the evidence.

█ Under these clearly enunciated standards, therefore, the government was not required to prove beyond a reasonable doubt that Bosko's and Vasil's assets were property derived from drug-related proceeds and thus subject to forfeiture. But the major portion of the instruction was given in clear accordance with the statute, and the burden of proof explained at great length by the court was the "preponderance" standard. The only complaint that could thus be raised is the higher hurdle placed before the government, not the defendants. The use of that stricter burden of proof probably had no impact on the jury's finding; it was harmless error and certainly does not change the forfeiture determination below. *See United States v. Pace*, 898 F.2d 1218, 1235 n. 5 (7th Cir.), *cert. denied sub nom. Cialoni v. United States*, —— U.S. ——, 110 S.Ct. 3286, 111 L.Ed.2d 795 (1990). We hold that there was no plain error in the district court's forfeiture instruction to the jury.

## VI. Fatal variance

█ Defendant Deborah Cerveny admits that she was a drug addict, a "hanger-on" who took free cocaine from Bosko, but insists that she was not a member of the conspiracy. The evidence at trial indicated that she made a sale to an undercover agent, accepted rides to La Petite restaurant to get cocaine, and delivered a message from Bosko to two co-conspirators in jail. Cerveny asserts that the evidence proved only that she exercised terrible judgment but not that she was a conspirator. However, if the court should find that she was a conspirator, Cerveny contends that she and Bosko engaged in a separate scheme, and challenges the sufficiency of the evidence of her participation in the overall conspiracy charged in Count 2.

The government points out that Cerveny pleaded guilty to two substantive delivery charges before trial,[18] and that at trial one of those deliveries was introduced in evidence as proof of the act demonstrating that Cerveny was selling Bosko's cocaine. It asserts that Cerveny's frequent trips to La Petite and her presence with Bosko at other locations after La Petite closed were valuable circumstantial evidence of her knowledge of the conspiracy. And the fact that she sold Bosko's cocaine indicates that she joined the conspiracy.

Defendant Cerveny presents bifurcated contentions: The evidence at trial was either insufficient to support her conviction on Count 2, alleging one large conspiracy, or sufficient to support only a small conspiracy between herself and Bosko. And, if the latter theory is correct, then there was a variance between the overall conspiracy alleged in the indictment and the proof of a separate conspiracy at trial. We can consider both arguments at once, however; for, when the issue is either insufficiency of the evidence or variance, our starting point on appeal must be the jury's determination that Cerveny was a member of the all-encompassing conspiracy. Moreover, our review of that verdict has been clearly defined by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979): "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential ele-

---

**18.** Defendant Cerveny entered a guilty plea on Count 3, distribution of 3.7 grams of cocaine with Bosko, and Count 4, distribution of 1.6 grams of cocaine.

ments of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. at 2789.

We have in the past noted that a conspiracy variance claim amounts to a challenge to the sufficiency of the evidence supporting the jury's finding that each defendant was a member of the same conspiracy. Whether a single conspiracy exists is a question of fact; consequently "[t]he jury gets first crack at deciding 'whether there is one conspiracy or several when the possibility of a variance appears.'" This is because the jury's verdict must be interpreted as a finding that the government presented sufficient evidence to prove its indictment beyond reasonable doubt, and that is all that we require of the prosecution.

*United States v. Townsend,* 924 F.2d 1385, 1389 (7th Cir.1991) (citations omitted). If we find that a jury reasonably could have found Cerveny guilty of conspiracy under Count 2, then we must uphold the verdict, even if the evidence might also indicate a smaller conspiratorial relationship between Cerveny and Bosko.

The fact that the government's evidence might also be consistent with an alternate theory is irrelevant; the law does not require the government to *disprove* every conceivable hypothesis of innocence in order to sustain a conviction on an indictment proved beyond reasonable doubt. Consequently, "even if the evidence arguably establishe[d] multiple conspiracies, there [is] no material variance from an indictment charging a single conspiracy if a reasonable trier of fact could have found beyond a reasonable doubt the existence of the single conspiracy charged in the indictment."

*Id.* (citations omitted).

By the terms of 21 U.S.C. § 846, a conspiracy has two essential elements: an agreement and an intention to violate the Controlled Substance Act. " 'The gist of the crime of conspiracy as defined by the statute is the agreement ... to commit one or more unlawful acts,' from which it follows that 'the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects.'" *United States v. Broce,* 488 U.S. 563, 570, 109 S.Ct. 757 [763], 102 L.Ed.2d 927 (1989), quoting *Braverman v. United States,* 317 U.S. 49, 53, 63 S.Ct. 99 [102], 87 L.Ed. 23 (1942). "A single agreement to commit several crimes constitutes one conspiracy. By the same reasoning, multiple agreements to commit separate crimes constitute multiple conspiracies." *Id.* 488 U.S. at 570–71, 109 S.Ct. at 763.

We have reviewed the record to determine whether there was substantial evidence at trial of Cerveny's participation in the broad conspiracy. *United States v. Auerbach,* 913 F.2d 407, 414 (7th Cir.1990), citing *United States v. Durrive,* 902 F.2d 1221, 1229 (7th Cir.1990) ("substantial" evidence needed for proof of individual's participation in conspiracy). Preliminarily we note that the defendant's guilty pleas concerned two sales of cocaine made in October and November of 1985, and that she is named in Count 2 of the indictment only in the second paragraph that describes the conspiracy during the latter part of 1985. The evidence at trial, however, clearly indicated Cerveny's long-term and deeper involvement.

First, the undercover police officer Caudill testified that Cerveny set the rules to be followed for the cocaine purchase. She made clear that the person delivering the cocaine would not meet customers because he was "paranoid" after a recent arrest. The evidence showed that Bosko (who had been arrested several months earlier) drove up in the white Riviera that Cerveny had been expecting. Five minutes after following Bosko into the United Grill Cerveny brought the cocaine to agent Caudill. She sold him 3.7 grams of cocaine for $275 and returned to the restaurant with the payment.

A jury could reasonably find that this evidence was sufficient to demonstrate that Cerveny knew of Bosko's drug distribution scheme at that time, and that she intended to associate herself with its purpose by selling the cocaine to Caudill. This court has held that the middleman (or, in this case, middlewoman) in a drug transaction,

"'one who buys from a conspirator for resale[,] is a member of the conspiracy if he knows at least its general aims....'" *Auerbach,* 913 F.2d at 415, quoting *United States v. Marks,* 816 F.2d 1207, 1212 (7th Cir.1987).

Even though Cerveny's direct contact with Bosko might support a theory that she and Bosko had established their own separate conspiracy, Cerveny's explanations to Caudill of her drug dealings with Bosko suggest a close working relationship that belies her claim that she was unaware of the overall conspiracy. *See Auerbach, supra.* In addition to this "overt act in furtherance of the conspiracy" was the evidence that Cerveny was present among the conspirators throughout the period alleged in Count 2 and was defendant Suchan's girlfriend for a time. In 1986 she was reported to frequent La Petite, and in 1987 she was often seen with Bosko and others at various restaurants. According to testimony she purchased cocaine at Bosko's house as well, sometimes even trading clothing for cocaine. Finally, her statements to two other co-conspirators who pleaded guilty and testified on behalf of the government suggested full knowledge of the conspiracy and participation in it.

There was, therefore, sufficient evidence for the jury to find that Cerveny's cocaine sales constituted knowing participation in the conspiratorial scheme and furtherance of the goals of the conspiracy, which were the buying and reselling of narcotics. It does not matter that the government offered no evidence of further sales by Cerveny. Once there was evidence of the 1985 sales, Cerveny's statements reflecting her knowledge of the operation and her continuing association with the conspirators were sufficient to establish that she was a member of the larger conspiracy. *See United States v. Paiz,* 905 F.2d 1014, 1020 (7th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991); *United States v. Sophie,* 900 F.2d 1064, 1080–81 (7th Cir.), *cert. denied sub nom. Duque v. United States,* — U.S. —, 111 S.Ct. 124, 112 L.Ed.2d 92 (1990).

Cerveny has failed to show that the evidence was insufficient to prove either a single overall conspiracy or her participation in it. The indictment charged a single conspiracy; the evidence proved both a single conspiracy to distribute illegal controlled substances and Cerveny's membership in the conspiracy. Therefore the defendant has failed to prove any variance between the indictment and the trial evidence in this case. Her conviction for participation in the conspiracy alleged in the indictment was proper.

## CONCLUSION

We find that the various allegations of the defendants herein were unsuccessful on appeal. For the foregoing reasons, the conviction of each of the defendants herein is AFFIRMED.