UNITED STATES of America,
Plaintiff–Appellee,

v.

Willie WILKS, Defendant–Appellant.

No. 94–1565.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 21, 1994.

Decided Jan. 31, 1995.

**641**

Before CUDAHY and FLAUM, Circuit Judges, and GRANT, District Judge.*

GRANT, District Judge.

Willie Wilks was the subject of a three count indictment which charged him with various drug trafficking offenses. Of these, only Count 2, which charged Wilks with attempting to possess one kilogram of cocaine with intent to distribute, carried a mandatory minimum ten year sentence upon conviction. 21 U.S.C. §§ 841(b)(1)(B), 846. Wilks trial counsel thus focused his attention on the second count, generally conceding his client's guilt with respect to one of the two lesser offenses which had been charged. Wilks protested and asked that his attorney be dismissed, but subsequently withdrew his objection and advised the court that he was satisfied with his attorney's performance. When the jury returned a guilty verdict on all three counts, however, Wilks' opinion of his attorney's performance deteriorated. On appeal, Wilks challenges only his conviction on Count 2. He contends that the district court abused its discretion in denying his request for a new attorney; that he was denied his Sixth Amendment right to effective assistance of counsel; and, that the government failed to prove its case beyond a reasonable doubt. We find no merit in any of the arguments raised, and accordingly affirm the conviction.

## I. FACTUAL BACKGROUND

Pursuant to a plea agreement, Larry McKenzie, an admitted drug dealer, was cooperating with federal authorities in an ongoing investigation of drug trafficking in the Milwaukee area. On October 13, 1992, McKenzie was introduced by a previous acquaintance to the defendant Willie Wilks with the understanding that Wilks would be able to supply him with cocaine. McKenzie was not disappointed. On October 14, Wilks sold McKenzie an ounce of cocaine for the agreed upon price of $1,300.00, and told

Paul Kanter, Asst. U.S. Atty., Milwaukee, WI (argued), for plaintiff-appellee.

James Rebholz, Milwaukee, WI (argued), for defendant-appellant.

* The Honorable Robert A Grant, of the United States District Court for the Northern District of Indiana, is sitting by designation.

McKenzie that the price would be better in the future.

McKenzie continued to contact Wilks through his pager in an attempt to negotiate a larger deal. When Wilks was unable or unwilling to sell McKenzie a kilogram of cocaine, McKenzie turned the tables, and offered to sell Wilks a kilo. Wilks agreed. Pursuant to their arrangement, the price of the kilogram was to be $24,000.00 with Wilks supplying $12,000.00 and another unidentified person supplying the balance. When McKenzie contacted Wilks on November 19, 1992, Wilks informed McKenzie that the other party was "a little shaky"; that he (Wilks) was going to proceed with the deal alone; and that he had $12,000.00 of the $24,000.00 purchase price. McKenzie subsequently agreed that, if Wilks could come up with $18,000.00, he would "front" the rest of the cocaine. In a telephone conversation which occurred later that day, McKenzie and Wilks made final arrangements to complete the deal at an apartment located at 1725 N. Prospect. Wilks agreed and stated that he would be there in fifteen minutes.

Officers thereafter observed Wilks leave his house carrying a paper bag. He opened the trunk of his car, stayed behind the vehicle for several minutes, closed the trunk and then drove away. After taking various detours which officers interpreted as counter-surveillance actions, Wilks stopped to pick up his nephew, Jeffrey Hayes. The two arrived in the 1700 block of North Prospect about thirty minutes after Wilks had spoken with McKenzie. Wilks slowed in front of 1725 N. Prospect, and parked in the only spot available just north of the apartment building. He was exiting his car when police officers intervened. The officers identified themselves, asked Wilks if he had any drugs or weapons, and did a pat down search. They found a folded piece of paper containing a small quantity of cocaine, and a pager. A search of the trunk revealed a paper bag containing eighteen packs of United States currency in small denominations, totaling just over $18,000.00. Wilks denied owner-

ship of the pager, and indicated that he had received the folded packet of cocaine from his nephew. He told the officers that the $18,000.00 belonged to him and his wife and that they kept the money in the car because they didn't believe in banks.

Wilks was subsequently charged with possession with intent to distribute one ounce of cocaine in violation of 21 U.S.C. § 841(a)(1) (Count 1), and attempted possession with intent to distribute one kilogram of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 2).[1] Trial commenced on November 1, 1993.

During the course of his opening argument, defense counsel told the jury that this case involved "a big fish" and a "little fish"; that the government's informant, Larry McKenzie, was the "big fish" and Wilks was the "little fish"; and that while Wilks may indeed have sold McKenzie an ounce of cocaine (thus conceding guilt with respect to Count 1), he was only involved in the kilo transaction alleged in Count 2 because the government informant, a large scale drug dealer, insisted on a large transaction. Counsel went on to argue that despite their conversations, Wilks ultimately had decided not to go through with the transaction and that but for the actions of police officers, Wilks would have driven away. He thus concluded that the substantial step necessary for the attempt to be complete never occurred. Before any evidence could be presented, however, the government moved for a mistrial on the basis of juror misconduct. The court granted the motion, and the trial was rescheduled for November 8, 1993.

Wilks' attorney delivered virtually an identical opening argument on November 8. This time, however, Wilks objected and asked that his attorney be dismissed. Although Wilks contended that he had never agreed to concede guilt with respect to any of the counts charged, his attorney advised the court that he had discussed his theory of defense at great length with Wilks prior to trial, and indeed had delivered substantially the same opening argument a week earlier

---

1. Count 3 of the indictment related to a drug transaction which occurred several months later in July 1993. Although Wilks was ultimately convicted on all three counts, the arguments he raises on appeal relate to only Counts 1 and 2.

without objection. Counsel explained that his defense strategy and opening statement were the result of professional judgment designed to defeat Count 2, the most serious offense, even if it resulted in conviction on one or both of the other counts, and that, in his professional opinion, the evidence of guilt on Count 1 was "irrefutable." The district court agreed, and accordingly denied Wilks' request for a new attorney. The court did, however, advise Wilks that he would be given the opportunity to raise his objections again at the close of the government's case.

When the evidence was concluded, the district court asked Wilks if he was satisfied with his attorney's performance, and Wilks told the court that he "ha[d] no concerns" and believed that his attorney was working in his best interest. The district court found on the basis of the record before him that counsel's strategy to concede Wilks' guilt on Count 1 and to focus his defense on Count 2 was reasonable and did not constitute ineffective assistance.

The jury ultimately returned a guilty verdict on all three counts, and this appeal followed.

## II.  DISCUSSION

Wilks is understandably unhappy with the jury's verdicts. He seems to be under the impression, however, that he has no one to blame but his attorney. He is mistaken.

### A.  Substitution of Counsel

■ Wilks contends as an initial matter that the district court committed reversible error when it denied his request for a new attorney. We disagree.

■ The record demonstrates that Wilks was given an adequate opportunity to explain why he wanted to dismiss his old attorney and acquire a new one. We thus limit our review of the district court's decision to deny his request to an abuse of discretion standard. *United States v. Hall,* 35 F.3d 310, 313 (7th Cir.1994); *United States v. Zillges,* 978 F.2d 369, 371 (7th Cir.1992).

In determining whether a denial of a motion for substitution of counsel constitutes an abuse of discretion, this court [considers] several factors, including the timeliness of the motion, the adequacy of the court's inquiry into the defendant's motion, and whether the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense.

*Zillges,* 978 F.2d at 372.

The adequacy of the court's inquiry in the present case cannot seriously be disputed. The district court gave Wilks ample opportunity to explain why he wanted a new attorney, and let the attorney respond to Wilks' accusations. While the court found the attorney's account more credible, it gave Wilks an opportunity to reraise his objections at the close of the evidence. When Wilks did not, the court, on its own initiative, asked whether he was satisfied with his attorney's performance. Wilks indicated that he was.

As for the timing of the defendant's motion and the extent of any communication breakdown which may have resulted, both factors favor the district court's decision. The timing of Wilks' request for new counsel was questionable to say the least. Defense counsel had clearly identified his defense strategy during opening arguments in the first trial on November 1, and yet Wilks raised no objection at that time. Nor did he indicate at any time prior to the commencement of the second trial that he was dissatisfied with his attorney or the defense he was pursuing. Although Wilks told the court that he had never agreed to concede guilt with respect to any of the counts charged, his attorney stated that he had discussed his theory of defense at great length with Wilks prior to trial. The district court found the attorney's statements the more credible of the two, and informed Wilks that he agreed with counsel's assessment of the evidence. Wilks thereafter effectively withdrew his request for new counsel, and at the close of the evidence advised the court that he had no concerns about his attorney's performance. Under the circumstances, we would be hard-pressed to find that a "total lack of communication" existed between the defendant and his attorney which prevented Wilks from presenting

an adequate defense. We thus find no abuse of discretion in the district court's decision.

### B. Wilks' Sixth Amendment Claim

Even if we were to assume for the sake of argument that the district court abused its discretion when it denied Wilks' request for new counsel, such an error would be harmless "if it did not result in a violation of a defendant's Sixth Amendment right to effective assistance of counsel." *Zillges,* 978 F.2d at 372. To succeed on appeal, Wilks must therefore demonstrate "that the performance of his attorney was not 'within the range of competence demanded of attorneys in criminal cases,' and that 'but for' counsel's deficiencies, 'the result of the proceeding would have been different.'" *Id.* at 372–73 (quoting *Strickland v. Washington,* 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984)). See also *United States v. Zarnes,* 33 F.3d 1454, 1473 (7th Cir.1994). Although he has failed on both counts, we address only the first.

Contrary to Wilks apparent understanding of the law, the Sixth Amendment does not guarantee a not guilty verdict. The mere fact that counsel's defense strategy was unsuccessful does not render counsel's assistance constitutionally ineffective. See *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. We have consistently held that a reasonable tactical move which the defendant himself has condoned cannot be the basis of a Sixth Amendment ineffective assistance claim. *Zarnes,* 33 F.3d at 1473; *United States v. Simone,* 931 F.2d 1186, 1196 (7th Cir.), *cert. denied,* 502 U.S. 981, 112 S.Ct. 584, 116 L.Ed.2d 609 (1991). That counsel's trial tactics were reasonable in the present case is amply demonstrated throughout the record and in the case law. See *United States v. Tabares,* 951 F.2d 405, 409 (1st Cir.1991) (counsel's admission to jury that defendant was guilty of less serious offense "was a tactical decision, designed to lead the jury towards leniency on the other charges and to provide a basis for a later argument for a lighter sentence"); *Simone,* 931 F.2d at 1196–97; *Underwood v. Clark,* 939 F.2d 473, 474 (7th Cir.1991) (reasonable trial tactic for lawyer to "conced[e] client's guilt of offense

of which the evidence was overwhelming, and to focus his efforts on the weakest link in the [government's] case"). The evidence of guilt with respect to Count 1 was indeed irrefutable, while the substantial step element necessary to prove attempted possession presented a much closer question. In conceding Wilks' guilt with respect to the one ounce transaction, counsel lent credibility to his argument that Wilks was only a small fish in the drug world. That Wilks condoned his attorney's trial strategy is evident from both the timing of his objection, and his subsequent withdrawal of that objection. We thus conclude, as did the district court, that counsel's performance fell well within the range of competence demanded of criminal attorneys, and did not constitute ineffective assistance.

### C. Sufficiency of the Evidence

Wilks' final challenge is to the sufficiency of the evidence. He contends that no reasonable juror could have found him guilty beyond a reasonable doubt of attempting to possess cocaine on the basis of the evidence presented.

The defendant's burden in challenging the sufficiency of the evidence is a formidable one. *United States v. Burrell,* 963 F.2d 976, 987 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992). "Our standard of review requires that the evidence be viewed in the light most favorable to the government in determining whether 'any rational trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Draiman,* 784 F.2d 248, 251 (7th Cir.1986) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). See also *Burrell,* 963 F.2d at 987. We will not reweigh the evidence or invade the jury's province of assessing credibility, *United States v. Van Wyhe,* 965 F.2d 528, 531 (7th Cir.1992), and we will overturn the jury's verdict "only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Crowder,* 36 F.3d 691, 695 (7th Cir.1994) (quoting *Brandom v. United States,* 431 F.2d 1391,

1400 (7th Cir.1970), *cert. denied,* 400 U.S. 1022, 91 S.Ct. 586, 27 L.Ed.2d 634 (1971)).

To convict, the government had to prove that "[Wilks] acted with specific intent to commit the underlying offense, and in addition took a substantial step toward its completion." *United States v. Cea,* 914 F.2d 881, 887 (7th Cir.1990) (citing *United States v. Rovetuso,* 768 F.2d 809, 821 (7th Cir.1985), *cert. denied,* 474 U.S. 1076, 106 S.Ct. 838, 88 L.Ed.2d 809 (1986)). That Wilks intended to purchase the cocaine when he spoke with McKenzie is undisputed. The terms of the deal were set and Wilks indicated he would be right over to finalize the transaction. Whether he took a substantial step toward completing that transaction was a question of fact for the jury to decide. It found that he did, and we agree.

"[W]hen a defendant has been active in negotiating a drug transaction and has actually taken physical steps to obtain possession of the drug, the attempt offense is complete." *Cea,* 914 F.2d at 888. See also *United States v. Williams,* 704 F.2d 315, 321 (6th Cir.), *cert. denied,* 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983) (substantial step completed where the defendant actively solicited narcotics sale by telephone and within a short time appeared at designated location with the money to consummate the sale); *United States v. Cafaro,* 480 F.Supp. 511, 515 (S.D.N.Y.1979) (substantial step completed where defendant had telephone conversations with a narcotics seller who was cooperating with the government; agreed that the defendant would bring the money to the seller's apartment that evening to complete the sale; brought the money and was arrested in the lobby of the seller's apartment). In the present case, Wilks had negotiated the terms of the sale; knew where the transaction was to occur; arrived at that location soon after the terms were agreed upon; and had the exact amount of money in his possession necessary to complete the transaction and obtain possession of the cocaine. The jury could reasonably have found on the basis of this evidence that Wilks had taken a substantial step toward the completion of the transaction and that, but for the intervention of the police, the sale would have been consummated. See

*United States v. Rosalez–Cortez,* 19 F.3d 1210, 1217 (7th Cir.1994).

### III.  CONCLUSION

For the foregoing reasons, Wilks' conviction is

AFFIRMED.