UNITED STATES, Appellee,

v.

Martha TABARES, Defendant,
Appellant.

UNITED STATES, Appellee,

v.

Ramiro RAMIREZ, Defendant,
Appellant.

Nos. 91–1273, 91–1331.

United States Court of Appeals,
First Circuit.

Heard Sept. 13, 1991.

Decided Nov. 14, 1991.

William J. Murphy, with whom Joseph A. Bevilacqua, Jr., was on brief for defendant, appellant Martha Tabares.

Konny Light Mitchell with whom K.L. Mitchell & Associates was on brief for defendant, appellant Ramiro Ramirez.

Margaret E. Curran, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., and Kenneth P. Madden, Asst. U.S. Atty., were on brief for appellee.

Before BREYER, Chief Judge, BOWNES, Senior Circuit Judge, and LOUGHLIN,* Senior District Judge.

BREYER, Chief Judge.

On June 24, 1990, FBI agents found drugs, cash, and a drug ledger in an apartment that Martha Tabares and Ramiro Ramirez shared. Subsequently, a jury convicted Tabares of conspiring to possess cocaine. 21 U.S.C. § 846. The jury convicted Ramirez (1) of the same conspiracy; (2) of actually possessing the cocaine (with intent to distribute it), 21 U.S.C. § 841(a)(1), (b)(1)(B); and (3) of unlawfully possessing a gun. 18 U.S.C. § 922(g)(1), (5). The district court sentenced Tabares to a prison term of 78 months and Ramirez to a term of 324 months. Both appeal their convictions and sentences. We affirm the convictions and Tabares' sentence, but we require a two-level reduction in the Sentencing Guidelines basis for Ramirez's sentence.

* Of the District of New Hampshire, sitting by designation.

## I

### Background

In June 1990, FBI agent James Burkett provided a federal magistrate with a sworn statement that two confidential and reliable informants had told him that Martha Tabares and Ramiro Ramirez were "in the business of selling large quantities of cocaine." Burkett added that one of the informants, within the previous few days, had been inside Apartment 301 at 752 Branch Ave, Providence (an apartment that Tabares and Ramirez occupied) and had "observed cocaine" there. On the strength of the affidavit, the magistrate issued a warrant authorizing a search of that apartment for drugs and related papers, records and proceeds. The next night, FBI agents, along with state and local police, executed the warrant.

The agents waited outside the apartment building until nearly 3 a.m., when Tabares and Ramirez drove up together. The agents searched them, finding both a loaded gun and $1,070 cash in Ramirez's pockets. They then went up to the apartment, which consisted of a living/dining room, a kitchen, a bathroom, and two bedrooms, one of which was furnished for a baby. While Tabares and Ramirez sat at the dining room table, the agents searched the apartment. In the adult bedroom, they found men's clothing. They also found a nightstand that contained a bag of cocaine, $400 rolled up in a rubber band, and an additional $14,010 cash mixed together with photographs in various envelopes. They found another bag of cocaine in a dresser drawer, which also contained tax returns in Ramirez's name. The cocaine in the two bags amounted to 730 grams, diluted with cornstarch to a purity of 68 percent. A box of cornstarch sat on top of the nightstand.

In the kitchen, the agents found personal documents with Tabares' name on them. On top of the refrigerator, they found $550 cash and a spiral notebook with notations of various cocaine transactions at prices

prevalent in the area during the preceding two months.

At trial, the government introduced evidence of the search, the items seized, utilities bills showing that the apartment was in Tabares' name, and testimony of the property manager that he had rented the apartment to Tabares, that both she and Ramirez appeared to live there, and that he had received rent payments at various times from both of them.

On the basis of this evidence, the jury convicted Ramirez of conspiracy, possession, and firearm charges. It acquitted Tabares of drug possession charges, but convicted her of the related conspiracy.

## II

### *The Convictions*

The appellants challenge the validity of their conviction with a host of legal arguments. None of their arguments has merit, nor do any of them warrant lengthy discussion. We shall, therefore, indicate only briefly the nature of each argument and why we reject it.

1. Appellant Tabares contends that Agent Burkett's affidavit supporting the search warrant failed to establish "probable cause" to believe the apartment contained cocaine, records, proceeds, and related items. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). She says that the informants were not shown to be reliable, that their information was stale, that neither they nor agent Burkett provided sufficiently specific supporting information, and that the warrant's description was too generally phrased. She adds that the agents seized photographs, not mentioned in the warrant.

■ The short, conclusive response to each of these claims is:

*Reliability.* The affidavit says

> Source 1 has given information in the past which has led to several individuals being convicted in U.S. District Court in Rhode Island and Rhode Island Superior Court. I have never found Source 1's information to be false.

This statement sufficiently indicates reliability. *United States v. Ciampa*, 793 F.2d 19, 24 (1st Cir.1986).

■ *Stale Information.* According to the affidavit, Source 1 said that he had been inside the apartment and observed cocaine there "within the past ten days." The information therefore is not stale. *Id.* at 23–24 (one informant's information sufficient to establish probable cause even if other information "stale").

■ *Detailed Information.* Source 1 said he had observed the cocaine inside the apartment "in the possession of Ramiro Ramirez and his wife Martha Tabares" in the past ten days, and that he "knows from conversations with" them that "they are in the business of selling large quantities of cocaine." Agent Burkett said another confidential reliable source corroborated Source 1 on the latter point. Agent Burkett added that his considerable experience, including participation in fifty searches, led him to conclude that apartments of those selling drugs usually contain related records, proceeds, and indicia of occupancy.

■ Courts are to read affidavits such as this one in a "common-sense" manner. *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332. So read, the affidavit is more than sufficient to support the warrant. *See Ciampa*, 793 F.2d at 22–23; *United States v. Asselin*, 775 F.2d 445, 446 (1st Cir.1985). We add that the warrant itself is highly specific in its descriptions of what the agents were to seize:

> cocaine; papers and records indicating ownership, tenancy, and/or control of Apt. 301, Bldg. 3, 752 Branch Ave., Providence, RI; records of controlled substance transactions; names, addresses, and telephone numbers of drug customers and suppliers; proceeds, including United States currency, from controlled substance tranactions [sic]; and safety deposit box keys.

Moreover, the agents' seizure of photographs in the cash-containing envelopes falls within the warrant's instruction to seize "records" that could indicate "ownership, tenancy, and/or control."

The search and the seizure were lawful.

2. Tabares argues that trying her together with Ramirez "prejudiced" her, primarily because the jury heard about Ramirez's possession of a gun, and the district court should therefore have severed her trial from his. *See* Fed.R.Crim.P. 14. However, the vast bulk of the evidence was admissible against both defendants; the basic conduct underlying the drug charges concerned both defendants; and the district court instructed the jury to consider the evidence against each defendant, and on each count, separately. *See United States v. Cresta,* 825 F.2d 538, 555 (1st Cir.1987), *cert. denied,* 486 U.S. 1042, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988). We can find no abuse of the district court's broad power to decide such matters. *See United States v. Martinez,* 922 F.2d 914, 922 (1st Cir.1991); *United States v. Boylan,* 898 F.2d 230, 246 (1st Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 139, 112 L.Ed.2d 106 (1990).

3. Appellants argue that the evidence was insufficient to support a conviction for conspiracy and, in Ramirez's case, for possession. We simply disagree. As we have said, the building's property manager testified that both defendants appeared to live in the apartment, that both made rent payments at different times, and that the apartment was leased in Tabares' name. The two arrived back at the apartment together at 2:50 a.m. The agents found men's clothing in the bedroom, Ramirez's tax returns in the dresser drawer, bags of cocaine, cash, and cornstarch in the bedroom, and a drug ledger in the kitchen. This evidence, in our view, was more than adequate for the jury to conclude that Ramirez exercised "dominion and control" over the apartment, thereby possessing the drugs within it. *United States v. Barnes,* 890 F.2d 545, 549 (1st Cir.1989), *cert. denied,* 494 U.S. 1019, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990). And, it permits the jury to conclude that both defendants had agreed to help each other sell cocaine as well. *See United States v. Arboleda,* 929 F.2d 858, 870 (1st Cir.1991).

4. Ramirez objects to the introduction at his trial of testimony by an agent that, during the search of the apartment, Tabares

repeatedly said that, "Get out of my baby's room. There's nothing in there. Stay out of my baby's room." She must have said it about twenty times.

Ramirez complains that this is hearsay. Ramirez did not object to the introduction of this evidence against him at trial, however. And, hearsay, if no objection is raised, is admissible. *United States v. Newton,* 891 F.2d 944, 947–48 (1st Cir. 1989).

5. Ramirez claims that he is entitled to a new trial because his counsel did not represent him effectively. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). His only colorable claim in this respect concerns his counsel's admission, to the jury, that his client Ramirez was guilty of the gun possession charges. As far as the record reveals, however, counsel's concession was a tactical decision, designed to lead the jury towards leniency on the other charges and to provide a basis for a later argument (to the judge) for a lighter sentence. Such "tactical retreats" are "deemed to be effective assistance." *United States v. Simone,* 931 F.2d 1186, 1196 (7th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 584, 116 L.Ed.2d 609 (1991).

Insofar as Ramirez wishes to raise an "ineffective assistance of counsel" claim that involves matters outside the trial record itself, he cannot raise it on direct appeal, but must do so through a collateral attack under 28 U.S.C. § 2255. *See United States v. Arango–Echeberry,* 927 F.2d 35, 39 (1st Cir.1991).

## III

### *Sentencing Issues*

After the convictions, the district court determined that the appropriate Guideline sentencing range for Tabares was 78–97 months (Offense Level 28, Criminal History Category I). The court sentenced her to 78 months in prison. The court determined that the appropriate Guideline sentencing range for Ramirez was 292–365 months

(Offense Level 36, Criminal History Category V). The court sentenced him to 324 months in prison. The appellants raise several legal objections to these sentences.

■ 1. Tabares points out that, in reaching Level 28, the district court found that she was a "minor" participant in the crime and subtracted two offense levels. U.S.S.G. § 3B1.2(b). She argues that the district court should have found that she was a "minimal" participant and therefore subtracted four levels. § 3B1.2(a). The four level downward adjustment for a "minimal" participant is designed to "cover defendants who are plainly among the least culpable of those involved," and is to "be used infrequently;" it would be "appropriate, for example," for one who acts as a "courier" for a "small amount of drugs." § 3B1.2, comment. (nn.1 & 2). The two level downward adjustment for a "minor" participant is for a "participant who is less culpable than most other participants, but whose role could not be described as minimal." § 3B1.2, comment. (n.3). The district court said that it was "not persuaded that Ms. Tabares is equally culpable with Mr. Ramirez," but, in light of the drugs in plain sight and the readily accessible cash, could not "in good conscience classify her as a minimal participant." It therefore classified her role as "minor." And, we cannot say that its decision was "clearly erroneous." *United States v. Valencia–Lucena*, 925 F.2d 506, 514 (1st Cir.1991) (citing *United States v. Wright*, 873 F.2d 437, 444 (1st Cir.1989)).

■ 2. The district court based the defendants' offense levels for the cocaine conspiracy on a finding that the conspiracy involved significantly more cocaine than the agents found inside the apartment. To the 730 grams found, the district court added another 3,555 grams that the spiral notebook indicated the defendants had sold during the preceding few months. And, it concluded that the conspiracy to sell cocaine involved 4,285 grams. Both defendants argue that the court, in calculating the sentence, could not lawfully include the cocaine to which the notebook referred.

The Guidelines make clear, however, that, when a court determines the amounts involved in a drug conspiracy, it shall "approximate the quantity of the controlled substance." And, in doing so "the judge may consider, for example, . . . financial or other records." § 2D1.4, comment. (n.2). By "quantity," the Guidelines mean the amount of drugs, whether or not "specified in the count of conviction," that "were part of the same course of conduct or part of a common scheme or plan as the offense of conviction." § 1B1.3(a)(2) & comment. (backg'd); *see also United States v. Blanco*, 888 F.2d 907, 909–11 (1st Cir.1989). The legal question, then, is simply whether the court could find that the drugs referred to in the notebook were part of the scheme or plan or conspiracy of which the jury convicted the defendants. That is to say, was the district court's finding that these amounts were part of the conspiracy "clearly erroneous"? *See United States v. Sklar*, 920 F.2d 107, 110–11 (1st Cir.1990).

The court based its quantitative conclusion upon the pre-sentence report, which in turn referred to trial testimony by a DEA agent that the spiral notebook was a ledger of drug sales, that it referred to prices current during the prior two months, and that the sales added up to at least 3,555 grams of cocaine. In addition, the appellants alone occupied the apartment, the ledger was readily available in the kitchen, and the apartment contained over $14,000 in cash, likely proceeds from fairly recent drug transactions. Given this evidence, which the appellants did not dispute, we cannot say that the district court's conclusion was "clearly erroneous." *See United States v. Cagle*, 922 F.2d 404, 407 (7th Cir.1991) (sentence based on amounts in ledger found in defendant's bedroom); *United States v. Ross*, 920 F.2d 1530, 1538 (10th Cir.1990) (ledger carried by defendant at time of arrest).

■ 3. Ramirez argues that, in light of his counsel's concession during the trial that he committed the firearm offenses, he is entitled to a two-level reduction for "acceptance of responsibility." § 3E1.1. However, he did not accept responsibility

for the drug charges, and he did not accept responsibility for the firearm charges until the trial was virtually over. The district court has especially broad authority to determine whether or not to award this two-level adjustment. *See* § 3E1.1, comment. (n.5); *United States v. Royer*, 895 F.2d 28, 29 (1st Cir.1990). And, the court did not exceed its legal authority here.

4. The district court raised Ramirez's "Criminal History Category" from IV to V because, in its view, Category IV did not "adequately reflect the seriousness of defendant's past criminal conduct." § 4A1.3 (authorizing departure in such circumstances). Ramirez argues that the court's departure was not lawful, but we disagree. The court gave two reasons, each of which it considered a sufficient basis for its departure. One of those reasons amounted to the fact that Ramirez had engaged in three prior instances of criminal behavior that had led to criminal charges but not convictions. These were possession of a dangerous weapon and two separate acts involving assault with a deadly weapon.

Ramirez did not deny the facts, as set forth in the presentence report, upon which these charges rested. The charges were dismissed, not because of any finding on the merits of the case, but for other reasons. (For example, the first two charges were dismissed because Ramirez was deported.) And, the Guidelines make clear that a court can depart upward, not simply upon the basis of other convictions, but also upon the basis of instances of "prior similar adult criminal conduct not resulting in a criminal conviction." § 4A1.3(e). There is no reason here, given Ramirez's failure to contest the facts and the absence of any acquittal, to doubt that these acts occurred. The only legal question is whether or not they provide an adequate basis for increasing the criminal history category. In our view, given their serious nature, these acts do provide such a basis. *See United States v. Aymelek*, 926 F.2d 64, 73 (1st Cir.1991). And, the district court's departure here was reasonable. *See United States v. Diaz–Villafane*, 874 F.2d 43, 49–52 (1st Cir.), *cert. denied*, 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989).

5. Finally, after the Probation Office prepared the presentence report but just before the sentencing hearing, the Office discovered that Ramirez had provided it with a social security number that did not belong to him. It informed the district court and suggested a two-level increase in Ramirez's sentence for "obstruction of justice." § 3C1.1.

The district court, at sentencing, noted that § 3C1.1 requires a two level increase for a defendant who "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during ... sentencing...." The court also noted that the Application Notes to this section offer as an example, "providing materially false information to a probation officer in respect to a presentence ... investigation for the court." § 3C1.1, comment. (n. 3(h)). The court found that providing the false social security number could "impede[ ] the ability of the probation officer to ferret out ... pertinent" facts, and that it made it more difficult for the probation office to "track[ ] the Defendant's employment history" thereby helping determine the defendant's ability to pay a fine.

Ramirez objects that he did not "willfully" mislead the Probation Office, and, regardless, that his failure to identify the number as a false one was not "material" to this investigation, for it did not impede, and it could not have impeded, the investigation in any way at all.

We agree with Ramirez on this point. We can find no evidence that he "willfully" lied about the number. But, regardless, as far as the record is concerned, we cannot find, nor can we realistically imagine, how the falseness of the number could have impeded the investigation. The false number is the same number as appeared on Ramirez's tax returns. It apparently is the number he had been using for some time. The number is likely to have helped, not impeded, the investigators as they looked for Ramirez's prior work history and assets. However material the falseness of the number might have been in some other case, it does not seem "material" in this one.

Other related cases we have found in which appellate courts have upheld increased sentences under § 3C1.1 seem to involve falsehoods far more significant than the one before us. *See, e.g, United States v. Delgado,* 936 F.2d 303, 306 (7th Cir.1991) (defendant lied to probation officer about criminal history and drug use); *United States v. Gardiner,* 931 F.2d 33, 34–35 (10th Cir.1991) (defendant used an alias at time of arrest and in three appearances before magistrate); *United States v. Baker,* 894 F.2d 1083, 1084 (9th Cir.1990) (defendant lied about criminal history).

We conclude that the district court erred in finding the false statement to be material to the investigation, and it therefore erred in ruling that Ramirez "obstructed" the presentence investigation. The court, therefore, must resentence Ramirez on the basis of an offense level of 34, instead of 36.

The convictions of appellants Ramirez and Tabares and the sentence of Tabares are

*Affirmed. The case is remanded for the resentencing of Ramirez in accordance with this opinion.*