USA v. Noel                        CR-92-25-B     12/30/92

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE


United States of America

        v.                                Criminal No. 92-25-01-B

Daniel Noel


O R D E R


Defendant Daniel Noel has been charged with having knowingly received materials through the mail containing visual depictions of minors engaged in sexually explicit conduct in violation of 18 U.S.C.A. §2252 (a)(2) (West 1990 & Supp. 1992).  The court held a hearing on December 17, 1992, on defendant's motions to suppress.


FACTS

After discovering that Noel was a customer of Donald B. Sherin, a convicted distributor of child pornography, agents of the United States Postal Service, through their undercover firm, "Globe-Tex Specialties," sent a letter to Noel to determine if he still wished to receive such material through the mail.  Noel responded by dispatching a letter to Globe-Tex Specialties in which he indicated his preference for male models age 8 - 17,

requested shipment of a sample videotape detailing the types of films available for purchase, and enclosed a signed copy of a customer information form indicating he was aware that the materials he was about to receive were considered illegal under current law. The agents mailed Noel the sample videotape on November 26, 1991, and Noel responded eight days later by sending a money order for two magazines and eight films. The agents then placed the eight films on a videotape and mailed the magazine and the videotape to Noel's home.

Before the magazine and the videotape arrived, United States Postal Agent, William W. Ricker, sought and obtained a warrant to search Noel's home. The warrant authorized the seizure of the following items: (1) the package containing the two magazines and the videotape of the eight films; (2) papers indicating Noel resided at the place to be searched; (3) materials documenting Noel's connection with Globe-Tex Specialties; (4) items relating to Noel's contact with Sherin; (5) the sample videotape; and (6) any videotape players and monitors or televisions.

Agent Ricker observed the mailman unsuccessfully attempt to deliver the package containing the magazine and the videotape. Agent Ricker later observed Noel take possession of the package at the post office, place it on the front seat of his car and drive away. Agent Ricker and his colleague, Agent Harold Frost, then set out after Noel in separate cars. Both agents expected Noel to return to his home. However, after Noel unexpectedly turned down a dirt road, the agents became concerned and decided

to stop Noel's car.

After stopping the car, Agent Ricker approached Noel, displayed his identification, and told Noel he had reason to believe Noel possessed child pornography. Agent Frost also approached Noel's car and displayed his identification card. Agent Ricker noticed the package on the seat, informed Noel that he was not under arrest but that the agents had a federal warrant to search his home. Agent Ricker then asked Noel if he knew that the package he had received contained child pornography. Noel replied that he was so aware, but that the FBI had informed him that it was permissible to receive such material if he agreed to use it only for himself. Noel added that the FBI had actually provided him with the initial offering material.

At one point during the stop, Noel asked the agents if they would wait until he finished work to execute their search warrant. Agent Ricker declined Noel's request and instead offered him the choice of either accompanying the agents to his home or returning to work while the agents searched his residence. Noel agreed to go with the agents, but stated that he needed to inform his employer that he would be leaving work early that day. At this point, Agent Ricker requested and received the package from Noel.

The stop and search of the car occurred a little after 2:00 p.m., and lasted approximately 3 - 5 minutes. Noel then notified his employer that he would not be returning to work and led the agents back to his home.

Upon arriving at his home, Noel stated, in response to a question by the agents, that he did not possess any weapons. Noel was given a copy of the warrant, and he sat in the front room of his home with Agent Ricker while Agent Frost began the search. Agent Ricker then questioned Noel about his personal history. At one point, Noel was asked where he kept his child pornography. He responded that he did not own such material anymore. Agent Ricker asked Noel if he had ever molested children. Noel stated that he did not remember because he used to drink. Agent Ricker then inquired whether Noel would take a lie detector test. Noel replied that he would like to talk to a lawyer first.

At some point during the search, Agent Frost and Noel were in the same room. Agent Frost asked Noel were he might find the material he had received from Sherin, and Noel stated it was in his closet. Agent Frost then questioned Noel about his service as a "Big Brother," and Noel responded by talking about his personal history, including the fact that he was once under psychiatric care. Noel added that he was happy to have received the materials from Globe-Tex Specialties.

While at the house, the agents continued to tell Noel that he was not under arrest. They allowed Noel to walk freely about the house, but asked Noel to refrain from entering any room that was being searched. During the search, a local police officer arrived at Noel's home to assist the agents.

While the search was underway, the agents discovered several

items they considered to be child erotica. After informing Noel that these items were not listed in the original warrant, they told him that they could either seize this material with his permission or attempt to obtain a new search warrant. Noel agreed to their seizure and signed a statement indicating that his consent was voluntary. The search of Noel's residence, which had begun around 2:30 p.m., was finally terminated at approximately 5:15 p.m.

## DISCUSSION

Noel seeks to suppress (1) the evidence seized during the search of his car because the agents lacked probable cause and a warrant to search the car; (2) all statements he made during the search of his car and home because the agents failed to inform him of his rights under Miranda v. Arizona; (3) all evidence seized pursuant to the search warrant because the warrant was overbroad and the search warrant application contained material omissions; and (4) all evidence obtained during the "consent" search of his home because his "consent" was involuntary. For the reasons stated below, the court denies defendant's motions.

## IMPROPER STOP AND EXECUTION OF WARRANT

Noel moved to suppress the evidence acquired during the stop of his vehicle on the grounds that, while the agents may have had probable cause to stop and search his car, their actions were improper because they possessed a warrant to search his home, not

-5-

his car. The court does not find this argument persuasive.

When government agents have probable cause to believe that a vehicle contains contraband or other evidence of criminal activity, they may stop and search the vehicle without a warrant. California v. Acevedo, 111 S. Ct. 1982, 1991 (1991); United States v. Ross, 456 U.S. 798, 800 (1982); United States v. Panitz, 907 F.2d 1267, 1272 (1st Cir. 1990). Possession of a warrant to search Noel's residence did not take his vehicle outside the scope of these cases. Thus, the only inquiry is whether the agents had probable cause, which Noel apparently concedes, to believe contraband could be found in his vehicle.

Probable cause to search exists when the facts and circumstances warrant a reasonable belief that criminal activity has occurred and that a particular search will produce evidence of its commission. See United States v. Santana, 895 F.2d 850, 852 (1st Cir. 1990); United States v. Melvin, 596 F.2d 492, 495-96 (1st Cir.), cert. denied, 444 U.S. 837 (1979). Moreover, probable cause to conduct a warrantless search of a vehicle may be based upon police observation. See United States v. Maguire, 918 F.2d 254, 260 (1st Cir. 1990), cert. denied, 111 S. Ct. 1421 (1991).

In the instant case, the agents who stopped Noel were aware of the nature and content of the package he had received through the mail. Furthermore, the agents knew Noel had ordered the material and they saw Noel take possession of the package and place it in his car. Accordingly, the agents had probable cause

-6-

to believe both that the package contained evidence of a crime and that the package could be found in Noel's vehicle.

Noel suggests that the evidence obtained in the vehicle stop should be suppressed because the agents had time to obtain a warrant to search his car.  This argument fails because the First Circuit Court of Appeals has held that the fact that government agents may have had adequate time to secure an anticipatory warrant does not mean that they must obtain such a warrant before conducting an automobile search.  Panitz, 907 F.2d at 1270 - 71 n.3.  Therefore, the search of Noel's vehicle and seizure of the package containing the child pornography remains justified as an automobile search supported by probable cause.


MOTION TO SUPPRESS/STATEMENTS OF THE DEFENDANT

Noel claims that the statements he made to the agents during the searches of his car and house must be suppressed because he was not given Miranda warnings.  Because the uncontroverted evidence indicates that Noel was not in police custody when he made his statements to Agent Ricker and Agent Frost, the court denies Noel's motion to suppress.

In assessing whether a person is in custody for Miranda purposes, the court, applying objective standards, must determine "whether there was a manifestation of significant deprivation of or restraint on the suspect's freedom of movement . . . ." United States v. Lanni, 951 F.2d 440, 442 (1st Cir. 1991).  The central precondition triggering Miranda is coerciveness.

-7-

Irrespective of the presence of probable cause, until a government agent exerts some type of coercion, the suspect cannot reasonably believe his freedom is restrained. Berkemer v. McCarty, 468 U.S. 420, 440-43 (1984); United States v. McDowell, 918 F.2d 1004, 1008 (1st Cir. 1990). Factors to consider include "'whether the suspect was questioned in familiar or at least neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint placed upon the suspect, and the duration and character of the interrogation.'" United States v. Masse, 816 F.2d 805, 809 (1st Cir. 1987) (quoting United States v. Streifel, 781 F.2d 953, 961 n.13 (1st Cir. 1986)).

The Supreme Court has determined that questioning of a defendant at a brief traffic stop prior to his arrest does not require Miranda warnings. Berkemer, 468 U.S. at 421. Similarly, the First Circuit Court of Appeals has held that Miranda warnings were not required during a 20-25 minute investigative detention of suspects authorized under Terry v. Ohio, 392 U.S. 1 (1968). United States v. Quinn, 815 F.2d 153, 161 (1st Cir. 1987).

In the present case, the undisputed evidence reveals that Noel was stopped for a brief period of time, approximately 3 - 5 minutes, and was immediately informed that he was not under arrest. Both Agent Ricker and Agent Frost were dressed in plain clothes and neither agent either displayed a weapon or physically restrained Noel. After quickly discussing the contents of the package, the agents told Noel that they had a warrant to search

his home and gave him the choice as to whether he wished to attend its execution. The duration of the stop and the absence of restraint, combined with the straightforward nature of the questioning, makes this case more analogous to a <u>Terry</u> stop or a traffic stop than a formal arrest.

As to statements made while Noel was at his house, the evidence demonstrating Noel's freedom of movement while he was at the house clearly outweighs Noel's current claim that he was in custody. Despite being informed that he was not under arrest, Noel voluntarily chose to follow the agents to his home. During the search, Noel wandered about his house and used his phone. The agents never did anything to restrain Noel during the search except to tell him he could not be in any room while that room was being searched. Moreover, they questioned Noel in a routine, non-threatening manner. At no time was Noel subjected to conditions comparable to a formal arrest. Accordingly, his statements will not be suppressed.

<u>DEFECTIVE WARRANT</u>

Noel suggests that the warrant was defective because it was overbroad in that it authorized the seizure of certain documents indicating residence and items, such as videotape players and television monitors, which are not contraband. The court rejects Noel's argument.

Evidence showing that Noel resided at the place where the contraband had been mailed may be properly seized. <u>See</u> <u>United</u>

-9-

<u>States v. Tabares</u>, 951 F.2d 405, 408 (1st Cir. 1991).  Moreover, Noel's possession of a videotape player and television monitor demonstrated that he had the capacity to view videotapes. Accordingly, they were properly subject to seizure as evidence tending to show that Noel had ordered the videotape.

MISLEADING AFFIDAVIT

Noel seeks to suppress evidence obtained pursuant to the warrant to search his home by arguing that the "illusion created by . . . misleading extraneous and omitted facts, which comprise the majority of the affidavit, amount to reckless disregard for the truth."  Specifically, Noel alleges that the affidavit discusses, at great length, his dealings with Sherin without mentioning that his purchases from Sherin predated the enactment of 18 U.S.C. §2252 (a)(2).  Noel claims that had the agents informed the Magistrate of the "legal" status of his earlier conduct, a warrant would not have been issued.  The court rejects this line of reasoning.

A search warrant issued on the basis of an affidavit which, on its face, is sufficient to establish probable cause will be invalidated if the challenger makes a substantial preliminary showing that (1) a false statement was intentionally or recklessly included, or a true statement intentionally or recklessly omitted, from the affidavit and (2) that the false statement was necessary for the finding of probable cause, or the inclusion of the omitted statement would have negated the finding

-10-

of probable cause.  See Franks v. Delaware, 438 U.S. 154, 171 - 72 (1978); United States v. Spinosa, No. 91 - 2125, slip op. at 12 (1st Cir. Dec. 15, 1992); United States v. Paradis, 802 F.2d 553, 558 (1986).

In the present case, the court finds that Noel fails to meet his burden on both counts.  First, despite being given the opportunity, Noel did not produce any evidence at the suppression hearing that the alleged omission was excluded recklessly or intentionally.  Second, while the discussion of Noel's dealings with Sherin tended to establish that his continued receipt of similar material was knowing, the inclusion of the omitted information would not have negated the Magistrate's finding of probable cause.  Even if the affidavit had expressly noted the effective date of 18 U.S.C. §2252(a)(2), the affidavit taken as a whole would have supplied the Magistrate with a basis for determining that there was a fair probability that evidence of a crime would be discovered in Noel's home.  See Illinois v. Gates, 462 U.S. 213, 238 (1983).  Accordingly, the court will not suppress the evidence obtained pursuant to the execution of the search warrant.


CONSENT SEARCH

Noel argues that the items seized from his house which were not listed in the warrant should be suppressed because his consent was involuntary in that it was elicited while he was in custody and subjected to a coercive environment.  Based upon the

uncontroverted evidence presented at the hearing, Noel's motion is denied.

If consent is properly obtained, government agents may conduct a search without showing cause or suspicion. Instead, they need only demonstrate that the consent was voluntary and was not the product of duress or coercion. See Schneckloth v. Bustamonte, 412 U.S. 218, 219, 248 (1972); United States v. Patrone, 948 F.2d 813, 815 (1st Cir. 1991), cert. denied, 112 S. Ct. 2953 (1992). Whether consent is voluntary is a question of fact to be determined by the totality of the circumstances. Patrone, 948 F.2d at 815 - 16 (citing Schneckloth, 412 U.S. at 227). While the suspect's knowledge of the right to refuse consent is a factor to consider, the government need not demonstrate such knowledge as "a prerequisite to establishing voluntary consent." Schneckloth, 412 U.S. at 249. Additional factors to consider include "the consenting party's possibly vulnerable subjective state; and evidence of inherently coercive tactics, either in the nature of police questioning or in the environment in which the questioning took place." United States v. Twomey, 884 F.2d 46, 51 (1st Cir. 1989), cert. denied, 496 U.S. 908 (1990).

At the hearing, Agents Ricker and Foster both testified that Noel was told on several occasions that he was not under arrest and that it was his choice as to whether or not he wished to attend the execution of the search warrant. After voluntarily following the agents to his home, Noel was again informed that he

-12-

was not under arrest, and he was permitted to wander freely about the premises. When the agents discovered items they wished to seize which were not listed in the original warrant, they told Noel that he could require them to attempt to secure an additional warrant or he could consent to their seizure. Rather than pursuing the former option, Noel agreed that the items could be seized and signed a statement attesting that his consent was "voluntar[y]" and "without threat or coercion." This fact, coupled with the candor of the agents in informing Noel that they would need a warrant if he did not consent and the absence of any threats, demonstrates that Noel's consent was voluntarily obtained. Accordingly, the items seized during the consent search of Noel's home will not be suppressed.

CONCLUSION

For the reasons set forth herein, Noel's motions to suppress (doc. nos. 13, 14, 15, 16, 17) are denied.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

December 30, 1992

cc:  United States Attorney
     United States Marshal
     United States Probation
     Howard Gross, Esq.

-13-