March 31, 1993

[NOT FOR PUBLICATION]
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 91-2324

UNITED STATES,

Appellee,

v.

LUIS DUQUE-RODRIGUEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Breyer, Chief Judge,

Cyr and Boudin, Circuit Judges.

William G. Small for appellant.

Jeffrey A. Locke, Assistant United States Attorney, with whom A.

John Pappalardo, United States Attorney, was on brief for appellee.

BREYER, Chief Judge. Luis Duque Rodriguez appeals

from a drug conspiracy conviction, 21 U.S.C. 841(a)(1),

and ten year prison sentence. After reading the record in

the case, we find his arguments unconvincing, and we affirm

the district court.

The record would permit the jury to find the

following facts:

1. In 1990 the FBI caught a major Colombian
cocaine dealer, Pedro Alvarez, who agreed to
help the FBI catch others.

2. Alvarez, on FBI instructions, ordered a
shipment of about half a ton of cocaine from
Colombia. The Colombian dealers sent the
cocaine to Massachusetts. They also sent a
fax to what (in fact) was an FBI office
saying, among other things, that about
fifteen pounds of the cocaine was for
"Victor," whom Alvarez identified as a New
York dealer, Luis Zapata.

3. On June 6, 1991, Alvarez told Zapata about
the shipment.

4. Four days later, Zapata hired Duque to drive
him to Massachusetts in Duque's van. The two
spent the night of June 10 at a Fall River
hotel, where Antonio Dillon, an FBI agent
(masquerading as Alvarez's associate) had
reserved them a room. On June 11, Zapata met
Dillon and told him that he had "brought a
friend with him to help him take the load
back to New York."

5. On the morning of June 12, Dillon, Zapata and
Duque met at the hotel. Dillon spoke about
other shipments and the need for security.
Duque agreed that security was important.

Dillon led Zapata and Duque (in Duque's van)
to a warehouse.

a) A film of the events, supplemented by
testimony of two FBI agents who were
present, shows that Duque's van backed
into the warehouse, Duque got out of the
van, watched two men open a white sack,
looked at bricks of cocaine inside,
waited while Zapata loaded several
cocaine bricks into storage compartments
built into the rear of the van, took two
bricks himself from the bag and put them
in a compartment under the passenger's
seat, and shut the van door.

b) Dillon testified that, during these
events, Duque said, "We've been using
the van; however, I need to . . . pay
for a secret . . . compartment to be put
into the van which will hold
approximately fifty . . . ."

6. The FBI then arrested Duque and Zapata.

Duque makes four arguments on this appeal. First,

he says that there was insufficient evidence for the jury to

conclude that he knew he was dealing with drugs. He points

to his own testimony that Zapata paid him only $1,000 for

the trip and to a legal rule that prohibits conviction on

the basis of an uncorroborated confession with nothing more.

Wong Sun v. United States, 371 U.S. 471, 488-89 (1963). The

jury, however, was free to disbelieve Duque's testimony

about his state of mind. It could easily believe that the

amount of payment, even if low, was not sufficient to offset

-3-
3

other evidence of Duque's knowing involvement. And the

record contained much corroboration -- a film showing Duque

loading cocaine, for example -- that makes the rule of Wong

Sun inapplicable. Cf. United States v. Guerrero-Guerrero,

776 F.2d 1071, 1075 (1st Cir. 1985) (jury could have

concluded beyond reasonable doubt that members of sailing

vessel's crew knew that vessel contained marijuana, in light

of reasonable inference that smugglers were counting on crew

to unload hundreds of heavy drug-laden sacks on board),

cert. denied, 475 U.S. 1029 (1986).

Second, Duque asks us to set aside his conviction

on the ground that the government behaved "outrageously."

United States v. Russell, 411 U.S. 423 (1973); see also

Hampton v. United States, 425 U.S. 484, 491-95 (1976)

(Powell, J., concurring); id. at 495-500 (Brennan, J.,

dissenting). Duque should have raised this matter before

trial. Fed. R. Crim. P. 12(b)(1), 12(f). But, in any

event, the argument is not substantial. Duque rests his

argument upon his claim that the government here gave its

informer, Pedro Alvarez, more than five hundred pounds of

cocaine. Duque points to an FBI agent's testimony that

275.5 kilograms were earmarked for Alvarez himself "as his

profit for assisting in the operation," or as "a fee for . .

-4-
4

. arranging the transport, importation of the cocaine into

the United States." In context, however, this testimony

refers to the fact that the Colombian dealers, thinking that

Alvarez was a drug broker, told Alvarez that he could keep

this amount as a broker's commission. Nothing in the record

suggests that the government intended to let Alvarez

actually keep the drugs or that he did so. Thus, Duque's

argument comes down to a claim that the government was wrong

to use the drugs in a "sting" operation. This circuit has

made clear, however, that a drug "sting" does not amount to

"outrageous" government conduct. United States v. Panitz,

907 F.2d 1267, 1273 (1st Cir. 1990); United States v.

Porter, 764 F.2d 1, 8-9 (1st Cir. 1985).

Third, Duque points out that the district court

sentenced him on the basis of nine kilograms of cocaine. He

says that the court should have sentenced him on the basis

of less than five kilograms. The court, however, could have

believed that he intended to transport nine kilograms of

cocaine, for Duque saw nine kilograms being loaded into his

van.

Fourth, Duque argues that the court should have

sentenced him as a "minimal," rather than as a "minor"

participant. See U.S.S.G. 3B1.2. On our view, however,

-5-
5

the court could have believed that Duque's role as a driver

was more significant than that of a minor "courier" in a

small operation, id. at 3B1.2, comment (nn.1 & 2),

particularly since his van seemed to have special

compartments that he said he intended to modify to carry

larger shipments. We recognize that his comparatively small

compensation ($1,000) argues in favor of a greater downward

adjustment, but the size of the operation argues the other

way. These matters are primarily for the district court,

United States v. Figueroa, 976 F.2d 1446, 1461 (1st Cir.

1992), cert. denied, 61 U.S.L.W. 3584 (U.S. 1993). And, we

can find no legal error in that court's exercise of its

judgment. Id. at 1462 (rejecting claim that district court

should have found defendant to be "minimal" participant,

rather than "minor" one); United States v. Tabares, 951 F.2d

405, 410 (1st Cir. 1991) (district court's determination

that defendant was a "minor" participant rather than

"minimal" one not clearly erroneous, where based on

reasonable inferences drawn from undisputed facts).

We find the appellant's remaining issues without

merit. See, e.g., United States v. Zannino, 895 F.2d 1, 17

(1st Cir. 1990) (issues adverted to in perfunctory manner,

-6-
6

unaccompanied by effort at developed argumentation, deemed

waived).

The judgment of the district court is

Affirmed.

-7-
7