LIPEZ, Circuit Judge,
dissenting.
My colleagues treat defendant Cortés-Medina’s dismissed and acquitted charges as if they have significance separate and apart from the conduct that they may, or may not, reflect. Hence, they find no error in the district court’s reliance on the defendant’s arrest record to justify a sentence at the top of the guidelines range — a term of imprisonment nearly four years longer than the sentence recommended by the government — despite the absence of any evidence about the conduct underlying those ultimately unproven charges. Neither Supreme Court precedent nor our own cases support treating as fact mere allegations of criminal behavior that are not substantiated by at least a preponderance of the evidence. Indeed, the cases make clear that, where the evidence of culpability does not meet that level of reliability, the district court errs by factoring unproven charges into the sentence. Accordingly, Cortés-Medina is entitled to a resentencing in which the unsubstantiated charges play no role.
I. Standard of Review
My colleagues apply the plain error standard of review because Cortés-Medina did not object to the portion of his presentence investigation report (“PSR”) listing charges against him that either were dismissed or resulted in acquittal.[7] I disagree that Cortés-Medina’s challenge to the court’s use of these unsubstantiated charges was unpreserved. Certainly, *71 Cortés-Medina was not required to object to the inclusion of these charges in his PSR, as he has not argued that the arrests and subsequent proceedings did not occur. He did, however, point out in his sentencing memorandum the flimsy foundation for many of the charges.[8] Referring to his multiple indictments in state court, he noted that “many of the indictments got dismissed because of lack of proof related to the supposed direct participation of the defendant and in others there [was] no proof at all.” He further stated that “many of these accusationfs] were dismissed because of insufficient evidence.” Although Cortés-Medina did not repeat his objection in the argument section of his memorandum, or explicitly assert that the court should not take his dismissed and acquitted charges into account, that objection and assertion are implicit in his contentions that the charges lack support.[9]
Moreover, even if plain error review applies, Cortés-Medina would satisfy its requirements. *72 [10] As I explain below, a sentencing judge may not properly rely on dismissed and acquitted charges to increase a defendant’s sentence without determining, by a preponderance of the evidence, that the charges reflect culpable conduct. Absent record support for treating the unproven charges as sufficiently well founded to meet that modest standard, a court’s use of them to justify a higher sentence is error that must be characterized as plain.[11] Here, the district court invoked such charges when selecting the high end of the applicable Guidelines range, despite the Probation Office’s inability to explain the underlying conduct or give reasons for the dismissals. The error was thus manifestly prejudicial. As for the miscarriage-of-justice prong, we previously have recognized that “the difference in potential jail time would be a concern in any balance.” United States v. Ramos-Gonzalez, 775 F.3d 483, 507 (1st Cir.2015) (quoting United States v. Torres-Rosario, 658 F.3d 110, 117 (1st Cir.2011)).
Accordingly, under either standard of review, Cortés-Medina prevails on his claim of procedural error.
II. The Standard of Reliability
This should be an easy case for concluding that a remand is necessary because, as the majority acknowledges, the Probation Office was unable to obtain information about the conduct underlying the unproven or acquitted charges reported in Cortés-Medina’s PSR. The district court thus had no evidence that those charges in fact re-fleeted criminal behavior. As the majority reports, the court nonetheless chose a sentence based, in part, on Cortés-Medina’s “pattern of arrests and persistent lack of follow-up with respect to the charges that were initially preferred against him.” My colleagues have no problem with that rationale, quoting language from one of our precedents stating that a record of arrests or dismissed charges “may indicate 'a pattern of unlawful behavior even in the absence of convictions.’” United States v. Flores-Machicote, 706 F.3d 16, 21 (1st Cir.2013) (quoting United States v. Lozada-Aponte, 689 F.3d 791, 792 (1st Cir.2012)). They maintain that, because Cortés-Medina has not contested his arrest record, “[t]he arrest record was ... a proven fact, and thus properly before the district court.” (Citation omitted.)
I agree with the general proposition that past criminal acts that did not result in conviction may be given weight in sentencing determinations if the available proof of those criminal acts meets some standard of reliability. I do not understand my colleagues to disagree with that proposition. Nevertheless, when the defendant’s criminal history contains a series of dismissed or acquitted charges, my colleagues hold that a district court may accord that pattern of alleged criminal activity probative weight based solely on the arrests, even if the court has no facts substantiating the conduct underlying the alleged charges.
The majority is wrong. Sentencing based on unexamined allegations of criminal behavior is not permitted by our own *73 or Supreme Court precedent. In articulating their view, my colleagues summarily dismiss as inapposite the Supreme Court’s decision in United States v. Watts, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (per curiam). There, the Court held that a sentencing court may consider acquitted conduct to impose an offense-level enhancement as long as that conduct is proven by a preponderance of the evidence. Id. at 157, 117 S.Ct. 633. The majority insists that Watts is inapplicable because the district court in this case relied on Cortés-Medina’s pattern of dismissed or acquitted charges, not his conduct. And, they say, because CortésMedina’s record of past charges was “a proven fact,” no error occurred.[12]
This attempt to distinguish Watts is misguided. A series of arrests or past charges is inseparable from the underlying conduct. Watts refers to the defendant’s conduct because that is the pertinent information in assessing whether the defendant’s past criminal activity is understated by reference to his convictions alone. The relevant question cannot be whether the defendant’s non-conviction arrests and prosecutions are reported accurately — in all likelihood,' the PSR will contain an accurate record of detentions and charges — but whether the defendant in fact committed the listed offenses notwithstanding the absence of convictions for those crimes. Indeed, the defendant’s conduct must be the focus because, where the charges initially filed against him did not bear fruit, they do not demonstrate culpability. A sentencing court cannot simply presume that the lack of convictions is attributable to flawed or lax prosecutorial or judicial systems rather than the defendant’s innocence. Sometimes, systemic flaws lead to arrests without justification. See United States v. Za-pete-Garcia, 447 F.3d 57, 61 (1st Cir.2006) (noting that “arrest ‘happens to the innocent as well as the guilty’ ” (quoting Michelson v. United States, 335 U.S. 469, 482, 69 S.Ct. 213, 93 L.Ed. 168 (1948))).
The next question, then, is what standard of reliability applies to the inquiry into the conduct underlying unproven charges. As I explain below, the answer is unequivocally provided by both Supreme Court and First Circuit caselaw..
A. The Teaching of Watts
The Supreme Court’s decision in Watts confirms that a sentencing court may not give weight to unproven crimes — whether uncharged, dismissed, or acquitted — unless the court finds by at least a preponderance of the evidence that the conduct underlying those charges occurred. In Watts, the Court rejected an argument that principles of due process foreclose reliance on acquitted conduct to calculate the Guidelines range, stating that “a jury’s verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence.” 519 U.S. at 157, 117 S.Ct. 633 (emphasis added). By including this qualification, the Court reaffirmed its prior holding that “application of the preponderance standard at sentencing generally satisfies due process.” Id. at 156, 117 S.Ct. 633 (citing McMillan v. Pennsylvania, 477 U.S. 79, 91-92, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)).
Although the focus in Watts was on the use of acquitted conduct to set the Guidelines range, the Court did not suggest that a standard less demanding than prepon *74 derance-of-the-evidence applies to the use of acquitted conduct — or any other unproven criminal activity — in choosing a sentence within the range.[13] To the contrary, multiple statements in the Watts opinions reflect an assumption that any facts used in sentencing — pertaining to allegations of past criminal conduct, or otherwise — must be proven by a preponderance of the evidence or an even higher standard of reliability. First, the Court quotes commentary from Guidelines § 6A1.3 stating that “it is ‘appropriate’ that facts relevant to sentencing be proved by a preponderance of the evidence,” 519 U.S. at 156, 117 S.Ct. 633, and the majority goes on to make the observation quoted above linking the preponderance standard with the requirements of due process. Id.[14] In addition, as described above, the Court framed its holding in Watts broadly, without any suggestion that the preponderance standard applies only for the purpose of selecting the Guidelines range: a sentencing court is permitted, in general, to consider “conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence.” Id. at 157, 117 S.Ct. 633.
Second, Justice Scalia points out that the preponderance of the evidence standard — the measure of reliability the Court has endorsed for other sentencing facts— is also consistent with due process for conduct underlying an acquittal. He asserts that neither the Sentencing Commission nor the courts may entirely exclude from the sentencing calculus “information which would otherwise justify enhancement of sentence or upward departure,” or impose “some higher standard of probative worth than the Constitution and laws require,” simply because that information “pertains to acquitted conduct.” See id. at 158, 117 S.Ct. 633 (Scalia, J., concurring).[15]
Third, and consistently, the Watts Court acknowledged the possibility that, in some circumstances, the more demanding clear- and-convineing evidence standard might be appropriate. Id. at 156-57, 117 S.Ct. 633. In a lengthy footnote citing cases reflecting “a divergence of opinion among the Circuits,” id. at 156, 117 S.Ct. 633, the Court quotes an Eighth Circuit case characterizing the Supreme Court’s McMillan decision as approving the preponderance standard only “ ‘for garden variety sentencing determinations,’ ” id. at 156 n. 2, 117 S.Ct. 633 (quoting United States v. Townley, 929 F.2d 365, 369 (8th Cir.1991)). *75 In other words, the Court in Watts considered the possibility that, at times, an assessment more reliable than the preponderance standard might be applicable to sentencing facts. Neither the Court nor the circuits it quoted in Watts contemplated the possibility of proof less reliable than preponderance of the evidence. This view that Waits reaffirms preponderance of the evidence as the minimum standard of reliability is also reflected in academic literature. See, e.g., Claire McKusker Murray, Hard Cases Make Good Law: The Intellectual History of Prior Acquittal Sentencing, 84 St. John’s L.Rev. 1415, 1468 (2010) (“Under Watts, prior acquittal sentencing is permitted but not mandated, and a hard floor of reliability is established in the form of the requirement that prior acquitted conduct be proved to a preponderance of the evidence.”).
B. First Circuit Law
The preponderance-of-the-evidence baseline for considering sentencing facts is also well established in our circuit. Indeed, we have applied the standard in this very context, i.e., to the choice of sentence within the Guidelines range where the court sought to rely on unproven criminal conduct. See United States v. Lombard, 102 F.3d 1, 4 (1st Cir.1996) (“[T]he district court may ... choose to give weight to the uncharged offenses in fixing the sentence within the statutory range if it finds by a preponderance of evidence that they occurred .... ”); see also United States v. Munyenyezi, 781 F.3d 532, 544 (1st Cir.2015) (“[A] judge can find facts for sentencing purposes by a preponderance of the evidence, so long as those facts do not affect either the statutory minimum or the statutory maximum.... ” (citations omitted)); United States v. Fermin, 771 F.3d 71, 82 (1st Cir.2014) (“While the jury must, of course, find facts beyond a reasonable doubt, a preponderance-of-the-evidence standard applies to the sentencing court’s factual findings.”); United States v. Gobbi 471 F.3d 302, 314 (1st Cir.2006) (stating that “acquitted conduct, if proved by a preponderance of the evidence, still may form the basis for a sentencing enhancement”).
I recognize that, although this standard of reliability is well established, we have not always used the words “preponderance of the evidence” when considering a district court’s reliance on charges that did not lead to conviction. See, e.g., Flores-Machicote, 706 F.3d 16; Lozada-Aponte, 689 F.3d at 792; Zapete-Garcia, 447 F.3d at 61. Nonetheless, we have applied that standard even when we have not referred to it by “name,” routinely scrutinizing the facts underlying the unproven criminal charges to ensure the necessary degree of reliability. See, e.g., United States v. Hinkley, 803 F.3d 85, 93 (1st Cir.2015) (upholding court’s reliance on reports of inappropriate sexual contact with minors where district court “found that it was reasonable to rely on the experience of the detective who prepared the police reports” and where “certain details reported by [a victim] made the reports ‘almost self-authenticating’ ”); United States v. Díaz-Arroyo, 797 F.3d 125, 127, 130 n. 3 (1st Cir.2015) (noting prosecutor’s explanation that charges for murder and attempted murder were dropped “only after the sole surviving witness to the incident (a minor who was able positively to identify the defendant as the shooter) was threatened and fled the jurisdiction,” and that defense counsel “did not directly challenge the prosecutor’s account of the circumstances surrounding the dismissal of the charges”); Flores-Machicote, 706 F.3d at 21 (noting that the district court “went to considerable lengths to walk through the defendant’s prior interactions with the law ... [and] explained, in some detail, why [it] *76 believed the outcome of these interactions underrepresented the seriousness of the defendant’s past criminal conduct”); United States v. Gallardo-Ortiz, 666 F.3d 808, 814-15 (1st Cir.2012) (noting that the district court took into account, inter alia, that numerous charges were dismissed on speedy trial grounds (i.e., not the merits), and rejecting defendant’s contention that the court relied on “the dismissed charges when concluding that he displayed a violent character”); United States v. Tabares, 951 F.2d 405, 411 (1st Cir.1991) (noting that some charges were dismissed “not because of any finding on the merits of the case,” but because the defendant was deported, and that defendant did not “deny the facts, as set forth in the presentence report, upon which these charges rested”).
C. Applying the Standard
Despite the precedent described above, my colleagues accept a bare list of past arrests and charges as sufficiently reliable evidence that the defendant did, in fact, commit the crimes for which he was charged but not convicted. They claim that ample precedent in our circuit recognizes that a series of arrests — as distinguished from a single arrest — “might legitimately suggest a pattern of unlawful behavior even in the absence of any convictions.” Lozada-Aponte, 689 F.3d at 792 (quoting Zapete-Garcia, 447 F.3d at 61). They assert that Cortés-Medina’s “pattern of arrests” and the “lack of follow-up” with respect to the charges filed against him “speak directly to the character of the individual, the risk of recidivism, and the need to protect the public from future crimes.”
Yet, even where a defendant’s record contains a multitude of allegations of criminal conduct, the district court — and we in turn — must be certain that a preponderance of the evidence supports a conclusion that the allegations have merit. See Gal-lardo-Ortiz, 666 F.3d at 815 (“We have cautioned against district courts relying on mere arrests as indicative of a defendant’s character to justify an upward departure from the GSR since a criminal charge alone does not equate with criminal guilt of the charged conduct.”); Zapete-Garcia, 447 F.3d at 61 (noting a guideline policy statement that “highlights] the important distinction between direct evidence of past criminal behavior and mere arrests that may or may not have been the result of wrongdoing”). Here, the district court had no evidence concerning the conduct underlying the various charges against Cortés-Medina that ultimately were dismissed or resulted in acquittal. At the sentencing hearing, after listing those charges and noting the absence of explanation for the dismissals, the district court merely voiced its “firm belie[f] that lightning doesn’t strike twice in the same place.”
Presumably, the court meant to offer a different metaphor — “where there’s smoke, there’s fire” — to say that the unproven charges had substance because Cortés-Medina had other,' similar criminal convictions and also admitted participating in the drug conspiracy charged in this case. When additional years of incarceration are in the balance, however, due process requires more than metaphors. The fire that the district court infers — past criminal conduct — must be based on a preponderance of the evidence.
The cases cited by the majority to support the use of a series of arrests as a proxy for culpability do not hold otherwise. As described above, the panel in Flores-Machicote noted the district court’s careful examination of the defendant’s prior interactions with the law. 706 F.3d at 21. In Zapete-Garcia, the panel rejected reliance on a single arrest that occurred more than *77 a decade earlier. 447 F.3d at 60-61. In the remaining two cases, where the court gave cursory attention to the district court’s reliance on a series of past arrests, it is nonetheless evident that the district courts had been presented with facts about the underlying conduct. See United States v. Ocasio-Cancel, 727 F.3d 85, 91-92 (1st Cir.2013) (indicating that the defendant’s PSR contained detail on the events giving rise to the dismissed charges and noting that the defendant did not object to “any aspect” of the discussion); Lozada-Aponte, 689 F.3d at 792 (referring to “Lozada’s frequent run-ins with law enforcement in Florida, Illinois, and Puerto Rico, some of which apparently involved firearms”). I do not dispute that the district court may rely on a PSR’s depiction of the circumstances that led to the dismissed charges as sufficiently reliable evidence of the conduct to meet the preponderance of the evidence standard, particularly in the absence of any objection.
No such evidentiary support exists here. Cortés-Medina’s PSR contains an unelabo-rated list of his dismissed and acquitted charges, with notations stating that “Court documents were requested but have not been received.” The PSR states that some of the charges were dismissed for lack of probable cause, while others are simply described as “dismissed.” The district court thus relied improperly on those charges to sentence Cortés-Medina to a longer term of imprisonment than it otherwise would have imposed.
III. Conclusion
A district court may not rely on a defendant’s unproven past criminal activity to increase his sentence for a later crime unless the court determines, by a preponderance of the evidence, the prior criminal conduct in fact occurred. This requirement applies equally to a single instance of prior criminal activity and to a series of alleged crimes. Invocation of a pattern does not eliminate the need to examine each unproven criminal charge under the preponderance of the evidence standard.
In this case, the majority concedes that no factual support was offered to substantiate the charges on which the district court relied. The Probation Office has also acknowledged that it tried, but failed, to obtain the supporting information. Hence, on this record, defendant Cortés-Medina is entitled to resentencing without reliance on the dismissed and acquitted charges. I therefore respectfully dissent from my colleagues’ conclusion to the contrary.

. The reference here to “dismissed” charges also encompasses references by the district court and the majority to arrests that may not have led to formal charges.

. In addition to four prior convictions, Cortés-Medina's PSR lists one acquittal and multiple arrests for charges that were subsequently dismissed.

. Cortés-Medina did not object to use of his unsubstantiated criminal history after sentence was imposed, but the obligation to reiterate an argument at that point is uncertain. See United States v. Gallant, 306 F.3d 1181, 1189 (1st Cir.2002)("CT]here is no Federal Rule of Criminal Procedure giving advance notice to counsel of a requirement to make post-sentence objections.”). Indeed, we have recognized the risk that a defendant might irritate the district court by resuming argument after the sentence is imposed. Id. at 1188-89 (observing that “few trial judges would warm to a rule which requires continued argument after the court gives its sentence”).
To eliminate that risk — and thereby diminish uncertainty on appeal concerning the appropriate standard of rfeview — I urge our court to follow the lead of other circuits and adopt a prophylactic rule requiring sentencing judges to expressly ask the parties for objections after the sentence is announced.
The Sixth Circuit, for example, has adopted such a rule pursuant to its supervisory power over district courts within its jurisdiction. The rule directs sentencing judges,
after pronouncing the defendant's sentence but before adjourning the sentencing hearing, to ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised. If the district court fails to provide the parties with this opportunity, they will not have forfeited their objections and thus will not be required to demonstrate plain error on appeal.... Providing a final opportunity for objections after the pronouncement of sentence, "will serve the dual purpose[s] of permitting the district court to correct on the spot any error it may have made and of guiding appellate review.”
United States v. Bostic, 371 F.3d 865, 872 (6th Cir.2004) (footnote omitted) (quoting United States v. Jones, 899 F.2d 1097, 1102 (11th Cir.1990), overruled on other grounds by United States v. Morrill, 984 F.2d 1136 (1993)). The Sixth Circuit’s rule is itself derived from a similar requirement in the' Eleventh Circuit. See Jones, 899 F.2d at 1102 (instructing district courts “to elicit fully articulated objections, following imposition of sentence, to the court’s ultimate findings of fact and conclusions of law”); id. at 1102-03 (stating that “[c]lear articulation” from defense counsel will "tell the appellate court precisely which objections have been preserved and which have been waived, and enable the appellate court to apply the proper standard of review to those preserved”).
The value of such a rule is illustrated by this case, where the requirement would have avoided, or at least minimized, the confusing jumble of standards deemed applicable by the majority:
(1) plain error for the claim that the district court improperly considered acquitted and dismissed charges; (2) abuse of discretion for the claim that the court failed to adequately consider the factors set forth in 18 U.S.C. § 3553(a); (3) plain error for the claim that the court failed to provide an adequate explanation of the chosen term of imprisonment; and (4) an uncertain standard of review for the defendant's challenge to the substantive reasonableness of his sentence (leading the majority to apply abuse of discretion).

. The four elements of the plain error test are: (1) an error that was (2) clear or obvious, which both (3) affected the defendant’s substantial rights and (4) “seriously impaired the fairness, integrity, or public reputation of judicial proceedings.” United States v. Ramos-González, 775 F.3d 483, 499 (1st Cir.2015) (quoting United States v. Ramos-Mejía, 721 F.3d 12, 14 (1st Cir.2013)).

. The majority asserts that “it defies reason” to conclude that there was a clear or obvious error here. That assertion is belied, however, by well-established Supreme Court and First Circuit precedent, described below, precluding reliance on a bare arrest record.

. The majority frames its holding as an absence of plain error, but its reasoning rejects any error at all.

. Notably, the issue debated by the majority and dissent in Watts was not whether a lesser standard should apply, but whether acquitted conduct should be a factor at all in calculating the Guidelines range. In his dissent, Justice Stevens conceded that the Guidelines permit the use of acquitted conduct in selecting the particular sentence within a range, but argued that acquitted conduct should be entirely excluded from consideration in setting the range. See 519 U.S. at 162, 166, 117 S.Ct. 633 (Stevens, J., dissenting).

. Section 6A1.3(a) of the Guidelines states, in part:
In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.
The commentary invoked by the Court states: "The Commission believes that use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case.” See 519 U.S. at 156, 117 S.Ct. 633 (citing § 6A1.3 cmt.).

.Although Justice Scalia does not refer expressly to the preponderance standard, he implicitly accepts the lead opinion’s affirmation of McMillan and the Court's long-held view that preponderance of the evidence is the constitutional baseline.